

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**11/17/2009**

| | | |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **EXPRESS ENERGY SERVICES OPERATING, LP, et al.,** | § § § | **Case No. 09-38044** |
| **Debtors.** | § § § § | **Jointly Administered** |

### FINAL ORDER (I) AUTHORIZING DEBTORS TO INCUR POST-PETITION SECURED INDEBTEDNESS; (II) GRANTING SECURITY INTERESTS AND SUPERPRIORITY CLAIMS PURSUANT TO SECTIONS 105(a), 364(c) AND 364(d) OF THE BANKRUPTCY CODE; AND (III) MODIFYING THE AUTOMATIC STAY TO THE EXTENT NECESSARY

### [Related to Docket No. 50 and 93]

This matter is before the Court on the motion (the "Motion"),[1] dated October 30, 2009, of Express Energy Services Operating, LP ("EES Operating") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above referenced chapter 11 cases (the "Cases"), pursuant to sections 105(a), 362, 364(c) and 364(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 - 1532 (as amended, the "Bankruptcy Code") and rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") seeking, among other things:

      (1)      authorization for EES Operating (the "Borrower") to borrow on a senior

secured revolving credit basis (the "Financing"), and for all of the other Debtors (the

---

[1]   Unless otherwise indicated, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Credit Agreement.

"Guarantors") to guaranty the Borrower's obligations in connection with the Financing, in an amount not to exceed $20 million (the "Commitment"), pursuant to that certain Debtor-In-Possession Credit Agreement (as amended in accordance with the terms thereof and the terms of this Final Order, the "DIP Credit Agreement" and, together with each of the Loan Documents, the "DIP Documents"), by and among the Debtors, ORIX Finance Corp., as administrative agent (in such capacity, the "DIP Agent"), and the lenders party thereto (the "DIP Lenders");

   (2) authorization for the Debtors to execute and enter into the DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

   (3) authorization for the Debtors to incur secured and superpriority administrative expense DIP Obligations (as defined below) under sections 364(c) and 364(d) of the Bankruptcy Code, payable from the Debtors' estates, subject only to the Carve-Out (as defined below), in accordance with the DIP Documents and this Final Order to secure any and all of the DIP Obligations;

   (4) upon entry of this Final Order, the limitation of the Debtors' and their estates' right to surcharge against the DIP Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code; and

   (5) the waiver of any applicable stay to provide for the immediate effectiveness of this Final Order.

Due and appropriate notice of the Motion and the hearing to consider the Motion on a final basis (the "Final Hearing") having been provided in accordance with section 102 of the Bankruptcy Code and Bankruptcy Rule 4001(c), and the relief requested therein having been served by the Debtors on, among others, (i) the twenty largest unsecured creditors of the Debtors

2

on a consolidated basis, as set forth in the certificate of service filed herein, (ii) counsel to the DIP Agent, (iii) Credit Suisse, Cayman Island Branch, the administrative agent (the "Prepetition Agent") for (A) the Debtors' prepetition secured lenders (the "Prepetition Lenders") under the Credit Agreement, dated as of July 11, 2008 (the "2008 Credit Agreement") and (B) that certain Swap Agreement, dated as of July 11, 2008 (the "Swap Agreement", and together with the 2008 Credit Agreement, the "Prepetition Facility"), (iv) counsel to certain of the Prepetition Lenders, (v) all applicable government agencies, to the extent required by the Bankruptcy Rules or the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas, and (vi) the United States Trustee for the Southern District of Texas, Houston Division (the "U.S. Trustee").

Upon the record made and the testimony received at the Final Hearing, the record of the Cases and the Declaration of Darron Anderson in Support of the Debtors' Chapter 11 Petitions and First Day Motions, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:[2]

1. **Disposition.** The Motion hereby is granted on a final basis on the terms set forth herein.  Any objections to the relief sought in the Motion that have not previously been resolved or withdrawn hereby are overruled on the merits.  This Final Order shall be valid, binding on all parties in interest and fully effective immediately upon entry by the Court.

2. **Jurisdiction and Venue.** This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334.  Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in

---

[2]  Findings of fact shall also constitute conclusions of law, and conclusions of law shall also constitute findings of fact.

this district pursuant to 28 U.S.C. §§ 1408 and 1409.   No request has been made for the appointment of a trustee or examiner and no Committee (as defined below) has yet been appointed in the Cases.

3.    **Commencement of the Cases.**   On October 27, 2009 (the "Commencement Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   The Debtors are continuing to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    **Notice.**   Notice of the Final Hearing and the relief requested in the Motion has been given by the Debtors and their noticing agent and constitutes due and sufficient notice thereof and complies with section 102 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(c) and 9014.

5.    **Prepetition Financing.**   Without prejudice to the rights of any non-debtor party in interest, the Debtors' acknowledge that (i) pursuant the Prepetition Facility, the Prepetition Lenders made certain loans, advances, and other financial accommodations to the Debtors (collectively, the "Prepetition Obligations"), (ii) as security for the Prepetition Obligations, the Prepetition Agent and the Prepetition Lenders were granted liens on and security interests in substantially all of the material assets and property of the Debtors whether then owned or thereafter acquired or arising, and all proceeds and products thereof, and all of the equity interests and all related rights with respect to the Debtors (collectively, the "Prepetition Liens").

6.    **Findings Regarding the Financing.**

(a)    Good cause has been shown for the entry of this Final Order.

(b)    The Debtors have an immediate need to obtain the Financing to provide the necessary assurance to the Debtors' vendors, suppliers and customers about the Debtors'

financial condition and to ensure that the Debtors have sufficient liquidity to finance the Debtors'
operations, maintain business relationships with vendors, suppliers and customers, pay
employees, satisfy other working capital and operational needs and administer and preserve the
value of the Debtors' estates during the pendency of the Cases.   The Debtors' incurrence of new
indebtedness and other financial accommodations are vital to the preservation and maintenance
of the going concern values of the Debtors and to maximizing the value of the Debtors' assets.

      (c)     The Debtors are unable to obtain the required financing on terms more
favorable than those offered by the DIP Lenders under the DIP Documents and are unable to
obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as
an administrative expense.   The Debtors also are unable to obtain secured credit under sections
364(c) or 364(d) of the Bankruptcy Code on equal or more favorable terms than those set forth in
the DIP Documents within the time frame required by their need to avoid immediate and
irreparable harm.   A revolving loan facility in the amount and under the terms provided by the
DIP Documents is not available without the Debtors granting to the DIP Agent and the DIP
Lenders, subject to the Carve-Out as provided for herein, the DIP Liens and the Superpriority
Claim (as defined below) under the terms and conditions set forth in the DIP Documents.   The
Prepetition Lenders and the Prepetition Agent have consented to the priming of their Prepetition
Liens by the DIP Agent on behalf of the DIP Lenders under the DIP Documents and this Final
Order.   After considering all alternatives and the fact that the Prepetition Lenders and the
Prepetition Agent would not consent to the priming of their Prepetition Liens in favor of other
lenders, the Debtors have concluded, in the exercise of their prudent business judgment, that the
DIP Facility represents the best working capital financing available to them at this time.

554233.2/2576-000155

(d)     The terms of the Financing are fair and reasonable, reflect the Debtors'
exercise of prudent business judgment consistent with their fiduciary duties and constitute
reasonably equivalent value and fair consideration.

(e)     The terms of the Financing have been negotiated in good faith and at
arm's length among the Debtors, the DIP Agent and the DIP Lenders.   All of the Debtors'
obligations and indebtedness arising under, in respect of or in connection with the Financing and
the DIP Documents, including, but not limited to, (i) all loans made to the Debtors pursuant to
the DIP Documents and (ii) all Obligations incurred (collectively, the "DIP Obligations"), have
been extended by the DIP Agent and the DIP Lenders in good faith, as that term is used in
section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by
section 364(e) of the Bankruptcy Code.   The DIP Agent and the DIP Lenders shall be entitled to
the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or
any provision herein is vacated, reversed or modified, on appeal or otherwise.   Entry of this
Final Order does not conflict with the terms of the Agreed Interim Order Granting Debtors'
Emergency Motion For an Order (I) Authorizing the Debtors' Interim and Final Use of Cash
Collateral; (II) Granting Adequate Protection; and (III) Scheduling a Final Hearing Regarding
the Use of Cash Collateral (together with any final order entered with respect to the use of cash
collateral and amendment to such order, collectively, the "Cash Collateral Order") and does not
constitute a Termination Event thereunder.

(f)     The Debtors have requested entry of this Final Order pursuant to
Bankruptcy Rule 4001(c)(2).   Absent the relief in this Final Order, the Debtors' estates will be
immediately and irreparably harmed.   Consummation of the Financing, therefore, is in the best
interests of the Debtors' estates.

7.     **Authorization of the Financing and the DIP Documents.**

(a)     The Debtors hereby are authorized to enter into the DIP Documents.   The Borrower hereby is authorized to borrow money pursuant to the DIP Documents in the principal amount of up to the Commitment (plus interest, fees and other expenses provided for in the DIP Documents).   The Guarantors hereby are authorized to guaranty such borrowings in an aggregate principal amount of up to the Commitment (plus interest, fees and other expenses provided for in the DIP Documents), subject to any limitations of borrowings under the DIP Documents.   In accordance with the terms of this Final Order and the DIP Documents, the borrowings under the DIP Documents shall be used solely for purposes permitted under the DIP Documents.

(b)     In furtherance of the foregoing and without further approval of the Court, each Debtor is authorized and directed on a final basis to perform all acts, to make, execute and deliver all instruments and documents (including the execution or recordation of security agreements, mortgages and financing statements), and to pay, whether from the borrowings under the DIP Documents or otherwise, all fees and expense reimbursements (including the fees and expense reimbursements of the DIP Agent and the DIP Lenders, and their attorneys, financial advisors and other professionals as set forth in the DIP Documents), that may be required or necessary for the Debtors' performance of the DIP Obligations, including:

(i)     the execution, delivery and performance of the DIP Documents and any exhibits attached thereto; and

(ii)     the performance of all other acts required under or in connection with the DIP Documents.

All such unpaid fees and expense reimbursements shall be included and constitute part of the principal amount of the DIP Obligations and be secured by the DIP Liens.

(c)       Upon execution and delivery of the DIP Documents and the entry of this Final Order, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the DIP Documents.   No DIP Obligation, payment, transfer or grant of security under the DIP Documents or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including under section 502(d) of the Bankruptcy Code), or subject to any defense, disallowance, recharacterization, reduction, setoff, recoupment or counterclaim.

8.       **Termination of DIP Loan Documents.**  The obligation to lend money under the DIP Credit Agreement (but no other provision of the DIP Credit Agreement or this Final Order), shall immediately and automatically terminate (except as the DIP Lenders may otherwise agree in writing), and all DIP Obligations shall be immediately due and payable, upon the earliest to occur of the following (each, a "Termination Event"):

(a)       the close of business on the date of final indefeasible payment and satisfaction in full in cash of the DIP Obligations and the termination of the Commitment under the DIP Credit Agreement;

(b)       the effective date of any confirmed plan of reorganization in any or all of the Chapter 11 Cases;

(c)       the close of business on the date of the consummation of the sale or other disposition of all or substantially all of the assets of the Debtors;

(d)       immediately upon the Debtors' receipt of written notice (with a copy to the Committee) from the DIP Agent of the occurrence of any violation by the Debtors of this Final Order or the occurrence of any Event of Default under the DIP Documents (subject to any applicable cure and notice periods, as provided in the DIP Documents);

554233.2/2576-000155

(e)     the dismissal of any of the Chapter 11 Cases or the conversion of any of the Chapter 11 Cases into a case under Chapter 7 of the Bankruptcy Code;

(f)     the 180th day following the Closing Date; and

(g)     a "Termination Event" under the Cash Collateral Order.

## 9.     Superpriority Claim.

(a)     Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute an allowed administrative expense claim against the Debtors (the "Superpriority Claim"), with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations, as defined below), and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, subject, in each instance, only to the payment of the Carve-Out.

(b)     The Superpriority Claim granted hereunder to the DIP Agent and the DIP Lenders shall be senior in priority to the adequate protection liens, superpriority claims and other protections (collectively, the "Adequate Protection Obligations") granted by the Court to the Prepetition Agent and the Prepetition Lenders pursuant to the Cash Collateral Order.

(c)     The term "Carve-Out" means, subject to the proviso below, an amount necessary to pay (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, (ii) the fees and expenses incurred by the Debtors in respect of compensation for services rendered or

9

reimbursement of expenses allowed by the Court to the Debtors' professionals and (iii) the fees and expenses incurred by any statutory committee appointed in the Debtors' Cases (each, a "Committee"), in respect of allowances of compensation for services rendered or reimbursement of expenses awarded by the Court to the Committee's professionals and the reimbursement of expenses allowed by the Court incurred by the Committee members in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members); provided, however, (w) the aggregate amount for the Committee fees and expenses in clause (iii) above shall not exceed $550,000, (x) the aggregate amount for all fees and expenses described in clauses (i) and (ii) above shall not exceed $2,500,000, (y) the payment of the fees and expenses described in clauses (i), (ii) and (iii) above shall only be to the extent authorized in, and in accordance with the initial pro forma thirteen-week cash flow budget (such initial budget, and subsequent budgets delivered pursuant to the DIP Credit Agreement, the "Budget"), a copy of which is attached hereto as Exhibit A, and which was delivered by the Debtors to and approved by the DIP Agent and the DIP Lenders, and (z) the payment of the fees and expenses described in clauses (ii) and (iii) above shall be subject to entry of an order of the Court allowing for the payment of such amounts.

(d)     In the event of a conversion of any of the Cases to cases under chapter 7, any amounts of the Carve-Out that have accrued through the date of any such conversion shall be charged against the assets of the Debtors; provided, however, that, in no event shall the Carve-Out include any fees or expenses incurred after the conversion of the Cases to cases under chapter 7 of the Bankruptcy Code.   Nothing herein shall be construed to impair the ability of any party in interest in the Cases to object to the reasonableness of any of the professional fees, expenses, reimbursement or compensation described above.

10.     **DIP Liens.**   As security for the DIP Obligations, the security interests and liens described in subparagraphs (a) through (d) below hereby are granted to the DIP Agent for its own benefit and for the benefit of the DIP Lenders (all property identified in subparagraphs (a), (b) and (c) below being collectively referred to as the "DIP Collateral") (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders pursuant to this Final Order and the DIP Documents, the "DIP Liens").   For the avoidance of doubt, upon entry of this Final Order, the DIP Agent and the DIP Lenders shall have DIP Liens (in the priorities set forth in subparagraphs (a) through (d) below) on (i) any proceeds or property recovered or otherwise the subject of successful causes of action under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or other applicable law, and (ii) the assets that were subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.   As described in greater detail in paragraph 13 below, the DIP Liens shall be valid, enforceable, effective and perfected by operation of law on a final basis immediately upon entry of this Final Order by the Court and without the necessity of the execution, recordation or filing by the Debtors, the DIP Agent or the DIP Lenders of mortgages, title certificates, security agreements, pledge agreements, financing statements, control agreements or other agreements.

(a)      *First Lien on Cash Balances and Unencumbered Property*.   Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and post-petition tangible and intangible property of the Debtors of any nature whatsoever (both real and personal), whether existing on the Commencement Date or thereafter acquired, and the proceeds thereof, wherever located, that, on or as of the Commencement Date is not subject to valid, perfected and

11

non-avoidable liens, including without limitation, all cash and cash collateral of the Debtors (whether maintained with DIP Agent or otherwise) and any investment of such cash and cash collateral, all present and future accounts receivable, tax refund claims, Net Insurance/Condemnation Proceeds or any other rights to payment whether arising before or after the Commencement Date, inventory, general intangibles, chattel paper, contracts, documents, instruments, interests of the Debtors in leaseholds, real properties, fixtures, machinery and equipment, vehicles, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of each Debtor, and the proceeds of all the foregoing.

      (b)    *Liens Priming the Prepetition Agent's and the Prepetition Lenders' Liens, Liens Securing the Adequate Protection Obligations and Other Liens*.   Pursuant to section 364(d)(1) of the Bankruptcy Code, at all times secured by a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in, and lien upon, all pre- and post-petition tangible and intangible property of the Debtors, including without limitation, all cash and cash collateral of the Debtors (whether maintained with DIP Agent or otherwise) and any investment of such cash and cash collateral, all present and future accounts receivable, tax refund claims, Net Insurance/Condemnation Proceeds or any other rights to payment whether arising before or after the Commencement Date, inventory, general intangibles, chattel paper, contracts, documents, instruments, interests of the Debtors in leaseholds, real properties, fixtures, machinery and equipment, vehicles, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of each Debtor, the Designated Account and all cash contained therein, the Operating Accounts and all cash contained therein, the proceeds of any Avoidance Actions, and the proceeds of all the foregoing, whether now existing or hereafter acquired, that is subject to any

12

existing liens (whether or not valid or perfected) including, without limitation, the liens securing

the obligations under the Prepetition Facility and the Adequate Protection Obligations.   Such

security interests and liens shall be senior in all respects to (i) the interests of the Prepetition

Lenders and the Prepetition Agent in such property arising from Prepetition Liens and (ii) any

future liens of the Prepetition Lenders and the Prepetition Agent.   For the avoidance of doubt,

the DIP Liens shall not prime or be senior in priority to the liens held by Wright Express

Financial Services Corporation ("**Wright Express**") (such liens, the "**Wright Express Liens**"),

if any, in any prepetition deposits (or replacement post-petition deposits), pledges and

prepayments made by the Debtors to Wright Express to secure the Debtors' obligations in

connection with the credit cards and fuel cards issued by Wright Express to the Debtors;

provided, however, that, without the prior written consent of the DIP Agent, the aggregate

amount of all such deposits, pledges and prepayments securing the Wright Express Liens shall

not exceed $500,000.

     (c)    *Liens Junior to Certain Other Liens with Respect to Certain Property of the Debtors.*   Pursuant to section 364(c)(3) of the Bankruptcy Code, at all times secured by a

valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all

prepetition and post-petition property of the Debtors (other than the property described in clauses

(a) or (b) of this paragraph 10, as to which the liens and security interests in favor of the DIP

Agent will be as described in such clauses), whether now existing or hereafter acquired, that are

subject to valid, perfected and unavoidable liens in existence immediately prior to the

Commencement Date or to valid and unavoidable liens in existence immediately prior to the

Commencement Date that are perfected subsequent to the Commencement Date as permitted by

section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP

Agent are junior to such valid, perfected and unavoidable liens.

13

(d)     *Liens Senior to Certain Other Liens*.   The DIP Liens shall not be subject to, made *pari passu* with, or subordinated to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (ii) any liens arising after the Commencement Date, including any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors or (iii) any intercompany or affiliate liens of the Debtors.

**11.     Protection of DIP Lenders' Rights.**

(a)     Until all DIP Obligations shall have been indefeasibly paid in full in cash (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid) (the occurrence of such actions, collectively, the "DIP Pay-Out"), the Prepetition Agent and the Prepetition Lenders shall (i) take no action to (x) foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition Facility (or any document entered into in connection with the Prepetition Facility) or the Cash Collateral Order, (y) otherwise exercise remedies against any DIP Collateral or (z) seek court authorization to either lift the automatic stay or exercise remedies against any DIP Collateral, (ii) be deemed to have consented to any release of DIP Collateral authorized under the DIP Documents and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action whatsoever to perfect their security interests in the DIP Collateral, unless required by applicable state law to continue the perfection of valid and unavoidable liens or security interests in effect as of the Commencement Date.

(b)     Upon entry of this Final Order, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified solely to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, immediately upon the occurrence of an Event of

14

Default, all rights and remedies provided for in the DIP Documents; provided, however, that the DIP Agent and the DIP Lenders, as the case may be, shall provide five (5) business days written notice (electronically, including via facsimile, or via overnight mail) to the U.S. Trustee, counsel to the Debtors, and counsel to the Committee, if any, prior to exercising any enforcement rights or remedies in respect of the DIP Collateral (other than declaring an Event of Default, accelerating the DIP Obligations or terminating the Commitments or ceasing the advance of money or extending credit to or for the benefit of the Debtors (to the extent they might be deemed remedies in respect of the DIP Collateral)).   The Debtors and any other parties in interest may seek within such five (5) business day notice period an expedited hearing before this Court solely for the purpose of considering whether, in fact, an Event of Default has occurred and is continuing.   At the expiration of such five (5) business day period, in the absence of the entry of an order by this Court that an Event of Default has not occurred or is not continuing, the DIP Agent and the DIP Lenders, as the case may be, shall be entitled to pursue all of their rights and remedies as set forth in the DIP Documents and this Final Order.   The rights and remedies of the DIP Agent and the DIP Lenders set forth in the DIP Documents and this Final Order are cumulative and not exclusive of any rights or remedies that the DIP Agent or the DIP Lenders may have.   Nothing herein shall preclude the DIP Agent and the DIP Lenders from seeking an order from the Court upon written notice (electronically, including via facsimile, or via overnight mail) to the U.S. Trustee, counsel to the Debtors, and counsel to the Committee, if any, to exercise any enforcement rights or remedies with respect to the DIP Collateral on less than five (5) business days notice.   The Debtors, the Prepetition Agent and the Prepetition Lenders shall not seek relief, including under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair, restrict or delay the exercise of the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Final Order or in the DIP Documents.   In no event

shall the DIP Agent or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

(c)     If, upon an Event of Default and in compliance with the preceding paragraph, the DIP Agent and the DIP Lenders shall at any time exercise any of their respective rights and remedies hereunder, under the other DIP Documents or under applicable law in order to effect payment or satisfaction of the DIP Obligations, or to receive any amounts or remittances due under the DIP Documents, including without limitation, by foreclosing upon and selling all or a portion of the DIP Collateral, the DIP Agent and the DIP Lenders shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the DIP Collateral, as the DIP Agent and DIP Lenders shall elect in their sole discretion.   Neither the Prepetition Agent nor any Prepetition Lender of a lien primed by this Final Order shall be entitled to object on the basis of the existence of any such lien to the exercise by the DIP Agent or the DIP Lenders of their respective rights and remedies under the DIP Documents or under applicable law to effect satisfaction of the DIP Obligations.   The DIP Agent and DIP Lenders shall be entitled to apply the payments or proceeds of the DIP Collateral in accordance with the provisions of this Final Order and the DIP Documents.

(d)     The Superpriority Claim and the DIP Liens granted to the DIP Agent and the DIP Lenders under this Final Order shall continue in any superseding case or cases for the Debtors under any chapter of the Bankruptcy Code, and such liens and security interests shall maintain their priority as provided in this Final Order until the DIP Pay-Out.

(e)     Upon five (5) days' written notice to the landlord of any leased premises upon which any Collateral is located (a "Landlord"), that a Termination Event by the Debtors of any of their obligations under the DIP Documents or this Final Order has occurred and is continuing, the DIP Agent may, subject to any separate agreement by and between such

16

Landlord and the applicable DIP Agent, enter upon any leased premises of any Debtor for the purpose of exercising any remedy with respect to Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the Landlord thereunder; provided, however, that the DIP Agent shall only pay base rent as defined in the lease with any such Landlord (or other agreement between the DIP Agent and the Landlord) and additional rent obligations of the Debtors (limited to charges for utilities, unless otherwise agreed between the Landlord and the DIP Agent) that first arise after the DIP Agent's written notice referenced above and that are payable during the period of such occupancy by the DIP Agent, calculated on a per diem basis.   Nothing herein shall require the Debtors to assume and assign to the DIP Agent any lease under § 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the Finance Party in this paragraph.

   (f) The Debtors (and/or their legal and financial advisors) will (i) keep proper books, records and accounts in accordance with GAAP in which full, true and correct entries shall be made of all dealings and transactions in relation to its business and activities, (ii) cooperate, consult with, and provide to the DIP Agent and the DIP Lenders all such information as required or allowed under the DIP Loan Documents, the provisions of this Final Order or that is afforded to any Committee and/or such Committee's respective legal or financial advisors, (iii) permit upon one (1) business day's notice, representatives of the DIP Agent and/or the DIP Lenders to, during normal business hours, visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired,

17

and (iv) permit representatives of the DIP Agent and the DIP Lenders to, upon reasonable advance written notice, consult with the Debtors' management on matters concerning the general status of the Debtors' business, financial condition and operations.

(g)     In the event that any party who holds a lien or security interest in Collateral that is junior and/or subordinate to the DIP Lenders' Liens in such Collateral receives or is paid the proceeds of such Collateral, or receives any other payment with respect thereto from any other source prior to the indefeasible payment in full in cash and complete satisfaction of all DIP Obligations under the DIP Documents and termination of the commitment in accordance with the DIP Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Collateral in trust for the DIP Lenders and shall immediately turnover such proceeds for application to the DIP Obligations under the DIP Documents.

12.    **DIP Fees.**

(a)     All fees payable and expenses reimbursable by the Debtors to the DIP Agent, including without limitation, the fees due the DIP Agent as set forth in the Fee Letter and, without duplication, as set forth in the DIP Documents, and the DIP Lenders under the DIP Documents are hereby approved and shall promptly be paid or incurred by the Debtors in accordance with the DIP Documents, and the Debtors may pay such fees and expenses from the proceeds of the Financing.

(b)     Promptly upon submission of invoices (which invoices shall (i) be delivered to the Court's chambers, the Debtors, the U.S. Trustee and any Committee and (ii) contain a summary description of the services rendered and a listing of the hours worked and services performed by the professionals for the time period covered thereby), the Debtors hereby are authorized and directed to pay all reasonable professional fees and expenses incurred by the

18

DIP Agent and/or the DIP Lenders in accordance with the terms of the DIP Documents and the Fee Letter.   None of the fees or expenses payable pursuant to this clause (b) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any retention applications or file interim or final fee application with respect thereto.

(c)     All unpaid fees and expenses of the DIP Agent and DIP Lenders, including, without limitation, all fees referred to in the DIP Documents and the Fee Letter (including, without limitation, all reasonable attorneys' and other professionals' fees and expenses), shall constitute DIP Obligations and shall be secured by the DIP Collateral and afforded all priorities and protections afforded to the DIP Obligations under this Final Order and the DIP Documents.

13.     **Acknowledgements of the Debtors.**   In connection with the Financing, the Debtors acknowledge, represent, stipulate and agree, *inter alia*, that:

(a)     the Debtors have obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be made or given to all federal, state and local governmental agencies, authorities and instrumentalities, if any, in connection with the execution, delivery, performance, validity and enforceability of the DIP Documents to which any of the Debtors are a party;

(b)     until the DIP Pay-Out, the Debtors agree that they will not prime or seek to prime the DIP Liens provided to the DIP Agent and the DIP Lenders under this Final Order or the DIP Documents by offering a subsequent lender or other party a lien securing a claim on the DIP Collateral with a priority that is superior to or *pari passu* with the DIP Liens;

(c)     until the DIP Pay-Out, the Debtors shall not permit to exist any administrative expense claim against any Debtors (now existing or hereafter arising) of any kind

19

or nature whatsoever, including any administrative expenses specified in or arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 and 1114 of the Bankruptcy Code, that has a priority that is equal to or superior to the priority of the Superpriority Claim, other than the Carve-Out;

(d)     the Debtors have requested that the Prepetition Agent and the Prepetition Lenders consent to, among other things, (i) the incurrence of the DIP Obligations, and (ii) the Debtors' granting of DIP Liens; and

(e)     none of the DIP Lenders is a control person or insider of any Debtor by virtue of any of the actions taken by any of them in respect of or in connection with the incurrence of the DIP Obligations.

14.     **Limitation on Charging Expenses Against Collateral.**   Except to the extent of the Carve-Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under any chapter of the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the DIP Agent.   No such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent and the DIP Lenders.

15.     **Perfection of DIP Liens.**

(a)     All DIP Liens granted herein and in the DIP Documents to or for the benefit of the DIP Agent and the DIP Lenders shall be, and they hereby are, valid, enforceable and perfected, effective as of the Commencement Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code or any other relevant law or regulation of any jurisdiction) no further notice, filing, recordation or other act shall be required to effect such perfection, and all DIP Liens on any deposit accounts or securities

20

accounts shall, pursuant to this Final Order be, and they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104 and 9-106 of the New York Uniform Commercial Code as in effect as of the date hereof in favor of the DIP Agent and the DIP Lenders.   None of the Debtors, the DIP Agent or the DIP Lenders shall be required to enter into or to obtain share certificates, share transfer forms, title certificates, landlord waivers, landlord access agreements, mortgagee waivers, bailee waivers or warehouseman waivers or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property), or obtain consents from any licensor or similarly situated party in interest, or take any other action to validate and to perfect the security interest in the DIP Liens granted pursuant to this Final Order.

(b)     The Debtors and the DIP Agent are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action to validate and perfect the liens and security interests granted hereunder.   Whether or not the DIP Agent shall choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Final Order.

(c)     A signed copy of this Final Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby

554233.2/2576-000155

authorized and directed to accept such certified copy of this Final Order for filing and recording. The DIP Agent may deliver a copy of this Final Order to any third parties having possession or control of DIP Collateral.

(d)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or other post-petition collateral related thereto, shall be deemed to have no force and effect with respect to the transactions granting DIP Liens in such leasehold interest in favor of the DIP Agent and the DIP Lenders in accordance with the terms of the DIP Documents or this Final Order (though the Debtors may be required to pay recordation or filing fees).   Notwithstanding any provision to the contrary in any lease, contract or other document, the DIP Agent and the DIP Lenders shall not be required to enter into any access agreements or similar agreements with any lessor to gain access to real property leased by the Debtors for the purpose of accessing and taking control of any DIP Collateral.

**16.     Preservation of Rights Granted Under this Final Order.**

(a)     No claim or lien securing a claim (other than the Carve-Out) having a priority superior to or *pari passu* with those granted to the DIP Agent and the DIP Lenders by this Final Order shall be granted or allowed until the DIP Pay-Out.   The DIP Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest (other than the Carve-Out) whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Until the DIP Pay-Out, the Debtors shall not, among other things, seek, and it shall constitute an Event of Default under the DIP Documents if any of the Debtors seek, or if there is, (i) entry of any order, without the DIP Lenders' prior consent, reversing, amending, supplementing, staying or vacating this Final Order, (ii) an order dismissing any of the Cases, (iii) confirmation of a plan that does not provide for either payment in full in cash of the Debtors' DIP Obligations on the effective date of such plan of reorganization, or any order shall be entered which dismisses any of the Cases and which order does not provide for payment in full in cash of the DIP Obligations, or any of the Debtors shall seek, support, or fail to contest in good faith the filing or confirmation of such a plan or the entry of such an order, (iv) any motion involving the sale of substantially all of the Debtors' assets that does not provide for the DIP Pay-Out, without the prior written consent of the DIP Agent and the DIP Lenders.   If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide that (x) the Superpriority Claim and the DIP Liens granted to the DIP Agent and the DIP Lenders pursuant to this Final Order and the DIP Documents shall continue in full force and effect and shall maintain their priorities as provided in this Final Order and the DIP Documents until the DIP Pay-Out and that such Superpriority Claim and the DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest, and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (x) above.

(c)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Agent of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any security interest, lien or priority authorized or created hereby or pursuant to

23

the DIP Documents with respect to any DIP Obligations.    Notwithstanding any such reversal, stay, modification or vacation, any DIP Obligations incurred by the Debtors to the DIP Agent and the DIP Lenders prior to the actual receipt of written notice by the DIP Agent of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the provisions of this Final Order, and the DIP Agent and the DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, including in the event this Final Order is vacated, reversed, or modified on appeal or otherwise, this Final Order and pursuant to the DIP Documents with respect to all DIP Obligations.

(d)    Except as expressly provided in this Final Order or in the DIP Documents, the Superpriority Claim, the DIP Liens and all other rights and remedies of the DIP Agent and the DIP Lenders granted by the provisions of this Final Order and the DIP Documents shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case(s) under chapter 7, dismissing any of the Cases, terminating the joint administration of the Cases or by any other act or omission or (ii) the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations.    The terms and provisions of this Final Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases are substantively consolidated, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claim and all other rights and remedies of the DIP Agent and the DIP Lenders granted by the provisions of this Final Order and the DIP Documents shall continue in full force and effect until the DIP Pay-Out.

17.    **Limitation on Use of Financing Proceeds.**

(a)    Notwithstanding anything herein or in any other order by the Court to the contrary, no borrowings under the Financing, DIP Collateral or the Carve-Out may be used (i) to

24

object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, or the liens or claims granted under this Final Order or the DIP Documents, (ii) to assert any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against the DIP Agent, the DIP Lenders, or their respective agents, affiliates, representatives, attorneys or advisors, in respect of the DIP Documents, (iii) to prevent, hinder or otherwise delay the DIP Agent's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Documents or this Final Order, (iv) to seek to modify any of the rights granted to the DIP Agent or the DIP Lenders under this Final Order or under the DIP Documents, or (v) to pay any amount on account of any claims or expenses arising prior to or after the Commencement Date unless such payments are approved by this Final Order (to the extent requested in the Motion) or are consistent with the Budget and approved (to the extent necessary) by an order of the Court.

(b)     In addition to, and not in limitation of the foregoing, no borrowings under the Financing, DIP Collateral or the Carve-Out may be used by any party in interest (i) to object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of the Prepetition Obligations, the liens securing the Prepetition Obligations or the Adequate Protection Obligations granted to the Prepetition Agent and the Prepetition Lenders under the Cash Collateral Order, (ii) to assert any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims or causes of action, objections or defenses against the Prepetition Agent and/or the Prepetition Lenders, (iii) to prevent, hinder or otherwise delay the Prepetition Agent's and/or the Prepetition Lenders' assertion or enforcement of any of their rights and remedies granted pursuant to the Cash Collateral Order or (iv) to seek to modify any

25

of the rights granted under the Cash Collateral Order to the Prepetition Lenders and the Prepetition Agent.

18.     **Binding Effect; Successors and Assigns.**   The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, all Committees appointed in the Cases and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders and the Debtors and their respective successors and assigns; provided, however, that the DIP Agent and the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee, chapter 11 trustee, examiner or similar responsible person appointed for the estates of the Debtors.   In determining to make any loan under the DIP Documents or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the DIP Agent and the DIP Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute).

19.     **Rights Reserved.**   Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights, claims, privileges, objections or defenses (whether legal, equitable or otherwise) of the DIP Agent and the DIP Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of such parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code,

(ii) request dismissal of the Cases, conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (b) any other rights, claims or privileges of the DIP Agent or the DIP Lenders (whether legal, contractual, equitable or otherwise) against any person or entity in any court.

20.    **Agreed Budget and Use of Funds.**    The Debtors represent that the Budget is achievable and will allow the Debtors to operate in the Cases without the accrual of unpaid administrative expenses.   The DIP Lenders are relying upon the Debtors' compliance with the Budget in accordance with this Final Order in determining to enter into the DIP Documents. The Debtors shall use the loans or advances made under, or in connection with, the DIP Documents solely as provided in the DIP Documents (including in accordance with the Budget, as such Budget may be extended, varied, supplemented, or otherwise modified in accordance with the provisions of the DIP Documents).   The Debtors shall not, without the prior written consent of the DIP Agent, use any amounts loaned or advanced under the DIP Documents or proceeds of the DIP Collateral with respect to any of the following Budget line items in an amount in excess of the aggregate amount budgeted on a cumulative basis for such Budget line items:   Total Operating Disbursements, Total Corporate Disbursements, Capex Disbursements and Total Professional Fees.   Notwithstanding anything herein to the contrary, for any line item expense, the Debtors shall be deemed to be in compliance thereof to the extent the cumulative expenditure or incurrence is not in excess of fifteen percent (15%) over the amount of such line item, on a cumulative basis, set forth in the Budget.

21.    **No Obligation to Lend.**    The DIP Lenders shall have no obligation to lend under the DIP Documents unless and until the conditions set forth in Article III of the DIP Credit Agreement have been satisfied or waived in accordance with the DIP Credit Agreement.

22.     **Amendments.**   The DIP Documents may be amended, modified, supplemented, or the provisions thereof waived in accordance with their terms, without further order of this Court or notice to any party; provided, however, that if such amendment, modification, supplement, or waiver is material and adverse to the Debtors' estates, such amendment, modification, supplement, or waiver, and upon any such timely written objection such amendment, modification, supplement, or waiver shall be effective only pursuant to an order of this Court.

23.     **No Third Party Rights.**   Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

24.     **Final Order Effective Immediately.**   This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

25.     **Priority of Terms.**   To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Loan Documents, the terms and provisions of this Final Order shall govern.

Dated: _____, 2009
  Houston, Texas

_____
HONORABLE JEFF BOHM
UNITED STATES BANKRUPTCY JUDGE

554233.2/2576-000155

**<u>EXHIBIT A</u>**

**BUDGET**

# Express Energy Services - Consolidated Cash Flow Projections
## Chapter 11 DIP Budget
($ in 000)

Printed: 10/28/09

| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 13-Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Week Ending | 10/30/09 | 11/6/09 | 11/13/09 | 11/20/09 | 11/27/09 | 12/4/09 | 12/11/09 | 12/18/09 | 12/25/09 | 1/1/10 | 1/8/10 | 1/15/10 | 1/22/10 | Total |
| | | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | |
| 1 | **Beginning Cash Balance** | 15,035 | 12,277 | 12,005 | 11,507 | 11,007 | 10,200 | 11,026 | 11,214 | 10,730 | 9,960 | 8,654 | 8,728 | 7,044 | 15,035 |
| 2 | **Receipts** | | | | | | | | | | | | | | |
| 3 | Total Operating Receipts | 3,699 | 3,428 | 3,747 | 3,220 | 4,386 | 4,257 | 4,212 | 3,951 | 3,485 | 2,784 | 2,715 | 2,705 | 2,700 | 45,289 |
| 4 | Other Receipts | 14 | 0 | 0 | 0 | 14 | 0 | 0 | 0 | 14 | 0 | 0 | 0 | 0 | 42 |
| 5 | Total Receipts | 3,713 | 3,428 | 3,747 | 3,220 | 4,400 | 4,257 | 4,212 | 3,951 | 3,499 | 2,784 | 2,715 | 2,705 | 2,700 | 45,331 |
| 6 | **Operating Disbursements** | | | | | | | | | | | | | | |
| 7 | Payroll | (2,246) | (1,009) | (2,302) | (1,009) | (2,246) | (1,009) | (2,302) | (1,009) | (1,160) | (2,059) | (1,160) | (2,150) | (1,160) | (20,857) |
| 8 | Supplies & Services | (641) | (641) | (641) | (641) | (641) | (641) | (641) | (641) | (641) | (565) | (565) | (597) | (596) | (8,013) |
| 9 | Insurance - P&C, Employee Benefits | (414) | (502) | (150) | (236) | (414) | (502) | (150) | (236) | (414) | (502) | (150) | (164) | (222) | (4,056) |
| 10 | Leases - Facilities & Vehicles | (669) | (10) | (150) | (121) | (671) | (10) | (20) | (117) | (663) | (10) | (10) | (20) | (112) | (2,453) |
| 11 | Fuel | (226) | (197) | (197) | (197) | (197) | (202) | (202) | (202) | (202) | (202) | (202) | (214) | (214) | (2,657) |
| 12 | Maintenance & Repairs | (94) | (94) | (94) | (94) | (94) | (94) | (94) | (94) | (94) | (94) | (94) | (99) | (99) | (1,232) |
| 13 | Other | (223) | (252) | (477) | (252) | (452) | (252) | (252) | (477) | (752) | (252) | (252) | (481) | (256) | (4,634) |
| 14 | Total Operating Disbursements | (4,513) | (2,705) | (3,881) | (2,550) | (4,716) | (2,710) | (3,661) | (2,777) | (3,851) | (3,721) | (2,434) | (3,725) | (2,659) | (43,903) |
| 15 | Net Cash Flow before Corporate | (800) | 723 | (134) | 670 | (315) | 1,547 | 551 | 1,174 | (351) | (937) | 281 | (1,021) | 40 | 1,428 |
| 16 | Cumulative Net Cash Flow before Corporate | (800) | (77) | (211) | 459 | 144 | 1,690 | 2,241 | 3,415 | 3,064 | 2,127 | 2,408 | 1,388 | 1,428 | 1,428 |
| 17 | **Corporate Disbursements** | | | | | | | | | | | | | | |
| 18 | Payroll | (161) | (12) | (169) | (12) | (161) | (12) | (169) | (12) | (13) | (160) | (13) | (167) | (13) | (1,075) |
| 19 | Non-Restructuring Professional | (60) | (135) | (60) | (60) | (60) | (60) | (60) | (60) | (135) | (60) | (60) | (60) | (60) | (930) |
| 20 | Insurance - P&C, Employee Benefits | (87) | (58) | (58) | (58) | (87) | (58) | (58) | (58) | (87) | (58) | (58) | (58) | (58) | (829) |
| 21 | Facility Leases | (17) | (21) | (6) | 0 | (17) | (21) | (6) | (10) | (17) | (21) | (7) | (7) | (9) | (261) |
| 22 | Other (1) | (62) | 0 | 0 | (670) | (59) | 0 | 0 | 0 | (58) | 0 | 0 | (301) | (242) | (1,301) |
| 23 | Accounts Payable Payments | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 24 | 503(b)(9) Payments | (300) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (300) |
| 25 | Utilities / Other Deposits | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 26 | Total Corporate Disbursements | (687) | (226) | (293) | (800) | (384) | (151) | (293) | (140) | (310) | (299) | (138) | (593) | (382) | (4,695) |
| 27 | Net Cash Flow before Capex | (1,487) | 497 | (427) | (130) | (699) | 1,396 | 257 | 1,034 | (662) | (1,235) | 144 | (1,614) | (341) | (3,267) |
| 28 | Cumulative Cash Flow before Capex | (1,487) | (990) | (1,418) | (1,547) | (2,246) | (850) | (593) | 442 | (220) | (1,456) | (1,312) | (2,926) | (3,267) | (3,267) |
| 29 | Capex Disbursements | (70) | (570) | (70) | (370) | (70) | (570) | (70) | (70) | (70) | (70) | (70) | (70) | (70) | (2,210) |
| 30 | Net Cash Flow before Professional | (1,557) | (73) | (497) | (500) | (769) | 826 | 187 | 964 | (732) | (1,305) | 74 | (1,684) | (411) | (5,477) |
| 31 | Cumulative Cash Flow before Professional | (1,557) | (1,630) | (2,128) | (2,627) | (3,396) | (2,570) | (2,383) | (1,418) | (2,150) | (3,456) | (3,382) | (5,066) | (5,477) | (5,477) |
| 32 | **Professional Fees** | | | | | | | | | | | | | | |
| 33 | Debtor | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (912) | 0 | 0 | 0 | 0 | (806) | (1,718) |
| 34 | Sponsor | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 35 | Lenders | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (288) | 0 | 0 | 0 | 0 | (288) | (576) |
| 36 | UCC / Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (248) | 0 | 0 | 0 | 0 | (108) | (356) |
| 37 | Total Professional Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (1,448) | 0 | 0 | 0 | 0 | (1,202) | (2,650) |
| 38 | Net Cash Flow before Financing | (1,557) | (73) | (497) | (500) | (769) | 826 | 187 | (484) | (732) | (1,305) | 74 | (1,684) | (1,614) | (8,128) |
| 39 | Cumulative Cash Flow before Financing | (1,557) | (1,630) | (2,128) | (2,627) | (3,396) | (2,570) | (2,383) | (2,866) | (3,598) | (4,904) | (4,830) | (6,514) | (8,128) | (8,128) |
| 40 | **Finance Payments / Borrowings** | | | | | | | | | | | | | | |
| 41 | DIP Fees and Costs | (1,200) | (200) | 0 | 0 | (38) | 0 | 0 | 0 | (38) | 0 | 0 | 0 | (200) | (1,677) |
| 42 | DIP Interest | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 43 | DIP Borrowings (Repayment) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 44 | Total Finance Payments / Borrowings | (1,200) | (200) | 0 | 0 | (38) | 0 | 0 | 0 | (38) | 0 | 0 | 0 | (200) | (1,677) |
| 45 | Net Cash Flow | (2,757) | (273) | (497) | (500) | (807) | 826 | 187 | (484) | (770) | (1,305) | 74 | (1,684) | (1,814) | (9,804) |
| 46 | Cumulative Cash Flow | (2,757) | (3,030) | (3,528) | (4,027) | (4,834) | (4,009) | (3,821) | (4,305) | (5,075) | (6,381) | (6,307) | (7,991) | (9,804) | (9,804) |
| 47 | Ending Cash Balance | 12,277 | 12,005 | 11,507 | 11,007 | 10,200 | 11,026 | 11,214 | 10,730 | 9,960 | 8,654 | 8,728 | 7,044 | 5,230 | 5,230 |
| 48 | DIP Facility Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

(1) Includes quarterly MIP payments assumed to be the minimum required amounts. Actual quarterly EBITDA will determine the MIP amounts payable and thus, these amounts are subject to change.