IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| In re | § | Chapter 11 |
| | § | |
| EXPRESS ENERGY SERVICES | § | |
| OPERATING, LP, *et al.*, | § | Case No. 09-38044 |
| | § | |
| Debtors. | § | |
| | § | Jointly Administered |

**MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE
JOINT PLAN OF REORGANIZATION OF EXPRESS ENERGY SERVICES
OPERATING, LP, AND ITS AFFILIATED DEBTORS AND DEBTORS
IN POSSESSION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

WEIL, GOTSHAL & MANGES LLP
700 Louisiana St., Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

SOLICITATION RESULTS ............................................................................... 3

FACTS ............................................................................................. 3

ARGUMENT ......................................................................................... 3

    I.     SECTION 1129(a)(1): THE PLAN COMPLIES WITH THE
          APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE ....................... 4

         A.     The Plan Complies with Section 1122 of the Bankruptcy Code .............. 4

         B.     The Plan Complies with Section 1123(a) of the Bankruptcy Code ......... 6

         C.     The Plan Complies with Section 1123(b) of the Bankruptcy Code .......... 9

    II.    RELEASES OF THE DEBTORS AND THIRD PARTIES  COMPLY
          WITH THE BANKRUPTCY CODE ................................................. 13

    III.   SECTION 1129(a)(2): THE DEBTORS HAVE COMPLIED WITH THE
          BANKRUPTCY CODE ............................................................ 15

    IV.   SECTION 1129(a)(3): THE PLAN HAS BEEN PROPOSED IN GOOD
          FAITH AND NOT BY ANY MEANS FORBIDDEN BY LAW ...................... 15

    V.    SECTION 1129(a)(4): THE PLAN PROVIDES THAT PROFESSIONAL
          FEES AND EXPENSES ARE SUBJECT TO COURT APPROVAL ............... 17

    VI.   SECTION 1129(a)(5): THE DEBTORS HAVE DISCLOSED ALL
          NECESSARY INFORMATION REGARDING DIRECTORS,
          OFFICERS, AND INSIDERS ...................................................... 18

    VII.  BANKRUPTCY CODE SECTION 1129(a)(6) IS NOT APPLICABLE ............ 20

    VIII. THE PLAN SATISFIES THE REQUIREMENTS OF SECTION
          1129(a)(7) OF THE BANKRUPTCY CODE ...................................... 20

    IX.   SECTION 1129(a)(8): THE PLAN HAS BEEN ACCEPTED BY
          IMPAIRED CLASSES, AND, AS TO SUCH CLASSES, THE
          REQUIREMENTS OF SECTION 1129(a)(8) HAVE BEEN SATISFIED ........ 22

    X.    SECTION 1129(a)(9): THE PLAN PROVIDES FOR  PAYMENT IN
          FULL OF ALL ALLOWED PRIORITY CLAIMS ................................ 22

    XI.   SECTION 1129(a)(10): AT LEAST ONE CLASS OF IMPAIRED
          CLAIMS HAS ACCEPTED THE PLAN ........................................... 24

    XII.  SECTION 1129(a)(11): THE PLAN IS NOT LIKELY TO BE
          FOLLOWED BY LIQUIDATION OR THE NEED FOR FURTHER
          REORGANIZATION ............................................................. 25

## TABLE OF CONTENTS
### (continued)

|  |  |  | Page |
|---|---|---|---|
| | A. | Legal Standard | 25 |
| | B. | The Plan Satisfies the Feasibility Requirement | 26 |
| XIII. | | SECTION 1129(a)(12):  ALL STATUTORY  FEES HAVE BEEN OR WILL BE PAID | 28 |
| XIV. | | SECTION 1129(a)(13) DOES NOT APPLY | 28 |
| XV. | | SECTIONS 1129(a)(14), AND 1129(a)(15) DO NOT APPLY | 29 |
| XVI. | | SECTION 1129(b):  THE PLAN SATISFIES THE "CRAM DOWN" REQUIREMENTS WITH RESPECT TO CLASS 5 and CLASS 6 | 29 |
| | A. | The Plan Does Not Discriminate Unfairly Against Claims in Class 5 | 30 |
| | B. | The Plan is Fair and Equitable as to Claims in Class 5 | 31 |
| | C. | The "Gifting" of New Equity Units to the Macquarie Group Does Not Violate the Bankruptcy Code | 32 |
| XVII. | | CONCLUSION | 33 |

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

In re 11,111, Inc., 117 B.R. 471 (Bankr. D. Minn. 1990)...................................................30

In re Buttonwood Partners, Ltd., 111 B.R. 57 (Bankr. S.D.N.Y. 1990) ...........................30

In re Chateaugay Corp., 89 F.3d 942 (2d Cir. 1996) .........................................................5

In re Cypresswood Land Partners, I, 409 B.R. 396 (Bankr. S.D. Tex. 2009)...................25

In re Elsinore Shore Associations, 91 B.R. 238 (Bankr. D.N.J. 1988).............................18

Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans
 Ltd. P'ship), 116 F.3d 790 (5th Cir. 1997) ..........................................................16, 25

In re Future Energy Corp., 83 B.R. 470 (Bankr. S.D. Ohio 1988) ...................................18

Heartland Fed. Savings & Loan Ass'n v. Briscoe Enter., Ltd. II (In re Briscoe
 Enter., Ltd. II), 994 F.2d 1160 (5th Cir. 1993) .................................................5, 16, 25

In re Johns-Manville Corp., 68 B.R. 618 (Bankr. S.D.N.Y. 1986)...............................15, 30

In re Lakeside Global II, 226 B.R. 499 (Bankr. S.D. Tex. 1989)......................................25

In re Leslie Fay Cos., 207 B.R. 764 (Bankr. S.D.N.Y. 1997) ...............................16, 25, 26

In re Lionel L.L.C., No. 04-17324 (BRL), 2008 WL 905928 (Bankr. S.D.N.Y.
 Mar. 31, 2008)............................................................................................................4

In re MCorp Finance, Inc., 137 B.R. 219 (Bankr. S.D. Tex. 1992)..............................30, 32

Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Cooperative,
 Inc.), 150 F.3d 503 (5th Cir. 1998) ..............................................................................4

In re McCommas LFG Processing Partners, LP, 2007 Bankr. LEXIS 4053
 (Bankr. N.D. Tex. 2007) ............................................................................................18

N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513 (1984) ....................................................17

Official Creditors' Committee v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305
 (1st Cir. 1993) ...........................................................................................................32

i

## TABLE OF AUTHORITIES
### (continued)

Page

Olympia & York Florida Equity Corp. v. Bank of New York (In re Holywell Corp.), 913 F.2d 873 (11th Cir. 1990) ............................................................6

Pereira v. Foong (In re Ngan Gung Restaurant), 254 B.R. 566 (Bankr. S.D.N.Y. 2000) ..................................................................................................................17

Republic Supply Co. v. Shoaf, 815 F.2d 1046 (5th Cir. 1987)............................................13

In re Rivera Echevarria, 129 B.R. 11 (Bankr. D.P.R. 1991).............................................31

In re Seven Seas Petroleum, Inc., 522 F.3d 575 (5th Cir. 2008) .......................................11

In re Sun Country Dev., Inc., 764 F.2d 406 (5th Cir. 1985)............................................16

In re Swiftco, Inc., 1988 Bankr. LEXIS 2251 (Bankr. S.D. Tex. 1988)...........................26

In re Texaco Inc., 84 B.R.  893 (Bankr. S.D.N.Y. 1988)...........................................16, 19

In re Texas Extrusion Corp., 68 B.R. 712 (N.D. Tex. 1986)............................................16

In re The Landing Associate, Ltd., 157 B.R. 791 (Bankr. W.D. Tex. 1993)....................26

In re Toy & Sports Warehouse, Inc., 37 B.R. at 149 .......................................................15

United States v. Reorganized CF&I Fabricators, Inc., 518 U.S. 213 (1996)....................21

Universal Oil Ltd. v. Allfirst Bank (In re Millennium Seacarriers, Inc.), 419 F.3d 83 (2d Cir. 2005)........................................................................................................12

In re Wabash Valley Power Ass'n, Inc., 72 F.3d 1305 (7th Cir. 1995)..............................5

In re Woodmere Investors Ltd. P'ship, 178 B.R. 346 (Bankr. S.D.N.Y. 1995) ...............25

In re Wool Growers Central Storage Co., 371 B.R. 768 (Bankr. N.D. Tex. 2007)..........13

In re Zenith Electrics Corp., 241 B.R. 92 (Bankr. D. Del. 1999) ......................................16

## TABLE OF AUTHORITIES
### (continued)

## FEDERAL STATUTES

**Statutes**

11 U.S.C. § 1129(a)(1) ....................................................................................... 4

11 U.S.C. § 1122(a) ........................................................................................... 4-5

11 U.S.C. § 1122(b) ............................................................................................ 6

11 U.S.C. § 1123(a) ............................................................................................ 6

11 U.S.C. § 1123(a)(1) ........................................................................................ 6

11 U.S.C. § 1123(a)(2) ........................................................................................ 7

11 U.S.C. § 1123(a)(3) ........................................................................................ 7

11 U.S.C. § 1123(a)(4) ........................................................................................ 7

11 U.S.C. § 1123(a)(5) ........................................................................................ 7

11 U.S.C. § 1123(a)(6) ........................................................................................ 8

11 U.S.C. § 1123(a)(7) ........................................................................................ 8

11 U.S.C. § 1123(b) ............................................................................................ 9

11 U.S.C. § 1123(b)(1) ........................................................................................ 9

11 U.S.C. § 1123(b)(2) ...................................................................................... 9-10

11 U.S.C. § 1123(b)(3)(A) .................................................................................. 10

11 U.S.C. § 1123(b)(3)(B) .................................................................................. 10

11 U.S.C. § 1123(b)(4) ...................................................................................... 11

11 U.S.C. § 1123(b)(5) ...................................................................................... 11

11 U.S.C. § 1123(b)(6) ...................................................................................... 11

11 U.S.C. § 1123(c) .......................................................................................... 12

11 U.S.C. § 1123(d) .......................................................................................... 12

## TABLE OF AUTHORITIES
### (continued)

**Page**

11 U.S.C. § 1125(b) ...................................................................................................... 15

11 U.S.C. § 1126 ........................................................................................................... 15

11 U.S.C. § 1129(a)(2) ................................................................................................. 15

11 U.S.C. § 1129(a)(3) ................................................................................................. 15

11 U.S.C. § 1129(a)(4) ................................................................................................. 17

11 U.S.C. § 1129(a)(5) ..............................................................................................18-19

11 U.S.C. § 1129(a)(6) ................................................................................................. 20

11 U.S.C. § 1129(a)(7) ..............................................................................................20-21

11 U.S.C. § 1129(a)(8) ................................................................................................. 22

11 U.S.C. § 1129(a)(9) ................................................................................................. 22

11 U.S.C. § 1129(a)(9)(A) ........................................................................................... 23

11 U.S.C. § 1129(a)(9)(B) ........................................................................................... 23

11 U.S.C. § 1129(a)(9)(C) ........................................................................................... 24

11 U.S.C. § 1129(a)(9)(D) ........................................................................................... 47

11 U.S.C. § 1127 ........................................................................................................... 59

11 U.S.C. § 1129(a)(10) ............................................................................................... 24

11 U.S.C. § 1129(a)(11) ............................................................................................... 25

11 U.S.C. § 1129(a)(12) ............................................................................................... 28

11 U.S.C. § 1129(a)(13) ............................................................................................... 28

11 U.S.C. § 1129(a)(14) ............................................................................................... 28

11 U.S.C. § 1129(a)(15) ............................................................................................... 29

11 U.S.C. § 1129(b) ...................................................................................................... 29

11 U.S.C. § 1129(b)(1) ................................................................................................. 30

## TABLE OF AUTHORITIES
### (continued)

**Page**

11 U.S.C. § 1129(b)(2) .............................................................................. 31

11 U.S.C. § 1129(b)(2)(C) ........................................................................ 31

## LEGISLATIVE HISTORY

H.R. Rep. No. 95-595, at 412 (1977) .................................................... 5, 17

S. Rep. No. 95-989, at 126 (1978) ........................................................ 5, 17

## MISCELLANEOUS

7 *Collier on Bankruptcy* ¶ 1123.01 [7], at 1123-16 .................................... 21

TO THE HONORABLE JEFF BOHM,
UNITED STATES BANKRUPTCY JUDGE:

Express Energy Services Operating, LP ("**EES**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"),[1] submit this Memorandum of Law (the "**Memorandum**") in support of confirmation of the Debtors' Plan (as defined below) pursuant to section 1129 of title 11 of the United States Code (the "**Bankruptcy Code**")[2] and respectfully represents as follows:

## PRELIMINARY STATEMENT

Prior to the commencement of the Debtors' chapter 11 cases (the "**Chapter 11 Cases**"), the Debtors engaged in good faith negotiations with Credit Suisse, as administrative agent and collateral agent (the "**Agent**") under the Debtors' prepetition senior secured credit agreement, and, eventually, with an ad hoc committee of the Senior Secured Lenders. Through these good-faith negotiations, the Debtors, the Agent, and certain Senior Secured Lenders (the "**Consenting Lenders**") entered into a Plan Support Agreement dated as of October 27, 2009 (the "**Plan Support Agreement**"). The Plan Support Agreement and the term sheet attached thereto provided for the Debtors' financial restructuring to be effected through a pre-negotiated chapter 11 plan of reorganization.

On October 27, 2009 (the "**Commencement Date**"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code and filed the following documents with

---

[1] The Debtors in these cases are Express Energy Services Operating, LP; Express Energy Services (2008) LLC; Express Energy Services Holding, LP; Express Energy Services GP, LLC; Express Energy Services CT, LP; Express Energy Services Ark, LP; Express Energy Services P&A, LP; Express Energy Services WL, LP; Express – Byrd R&S GP, LLC; Express – Byrd R&S Oilfield Services, L.P.; Express – MBCC GP, LLC; Express – MBCC, Ltd.; Express – Mike Byrd Casing Crews GP, LLC; Express – Mike Byrd Casing Crews, Ltd.; Express – R&S Tong Services GP, LLC; Express – R&S Tong Services, Ltd.; Express – BAH Leasing GP, LLC; Express – BAH Leasing, Ltd.; D&D Tongs GP, LLC; D&D Tongs, L.P.; Express – North Trail Oilfield Services, GP, LLC; Express – North Trail Oilfield Services, Ltd.; Express Ace Rat Hole Service GP, LLC; and Express – Ace Rat Hole Service, Ltd.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement (as defined below), as may be applicable.

the Bankruptcy Court:

    **(i)**    Plan Support Agreement;

    **(ii)**    Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of October 27, 2009 (as updated on November 3, 2009, the "**Plan**");

    **(iii)**    Proposed Disclosure Statement for the Plan (as may be amended or supplemented, the "**Disclosure Statement**"); and

    **(iv)**    a motion requesting preliminary approval of the Disclosure Statement and authority to solicit acceptances of the Plan (the "**Disclosure Statement Motion**").

On October 29, 2009, the Bankruptcy Court entered an order (the "**Disclosure Statement Order**") preliminarily approving the Disclosure Statement and authorizing the Debtors to solicit acceptances of the Plan.  Pursuant to the Disclosure Statement Order, the Bankruptcy Court established December 1, 2009 as the deadline for parties in interest to (i) vote to accept or reject the Plan and (ii) object to confirmation of the Plan.  On December 2, 2009, the Debtors filed their Plan Supplement in Support of the Plan (the "**Plan Supplement**").

    The Plan represents the culmination of efforts by the Debtors, the Agent, certain Senior Secured Lenders, and each of their respective professionals and advisors to effectuate a restructuring that both preserves the Debtors' going-concern value and preserves the jobs of the Debtors' employees in connection with the Debtors' go-forward operations.  In support of confirmation of the Plan, the Debtors have filed contemporaneously herewith:

    **(i)**    Declaration of Darron Anderson in Support of Confirmation of the Plan (the "**Anderson Declaration**");

    **(ii)**    Declaration of Jim Davis in Support of Confirmation of the Plan (the "**Davis Declaration**");

    **(iii)**    Declaration of Dean Swick in Support of Confirmation of the Plan (the "**Swick Declaration**"); and

**(iv)** Declaration of Jeffrey S. Stein of The Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes and Results of Voting with Respect to the Plan (the "**Voting Certification**," and together with the Anderson Declaration, Davis Declaration, and Swick Declaration, the "**Declarations**").

The Debtors submit that this Memorandum, together with the Declarations and the additional evidence to be adduced at the hearing to be held before the Bankruptcy Court on December 7, 2009 (the "**Confirmation Hearing**"), demonstrates that the Plan satisfies all required elements of section 1129(a) of the Bankruptcy Code (other than section 1129(a)(8) of the Bankruptcy Code with respect to Class 5). Accordingly, the Debtors respectfully request that the Bankruptcy Court enter an order confirming the Plan.

## SOLICITATION RESULTS

Under the Plan, Class 1 (Select Priority Claims) and Class 2 (Miscellaneous Secured Claims) are unimpaired and, in accordance with section 1126(f) of the Bankruptcy Code, are deemed to have accepted the Plan. Class 3 (Senior Secured Claims) and Class 4 (General Unsecured Claims) are impaired and were allowed to vote on the Plan. Class 5 (Existing Equity Interests) is fully impaired and, in accordance with section 1126(g) of the Bankruptcy Code, is deemed to reject the Plan. As reflected in the Voting Certification, Class 3 and Class 4 overwhelmingly voted to accept the Plan by the requisite statutory amounts.

## FACTS

The pertinent and salient facts relating to the Debtors' Chapter 11 Cases and the Plan are set forth in the Disclosure Statement, the Plan, and the Declarations. Such facts are incorporated herein as though set forth fully and at length. Salient facts, as necessary, will be referred to in connection with the discussion of applicable legal principles.

## ARGUMENT

To obtain confirmation of the Plan, the Debtors must demonstrate that the Plan satisfies the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence. *Heartland Fed. Savings & Loan Ass'n v. Briscoe Enter., Ltd. II (In re Briscoe Enter., Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993); *see also In re Lionel L.L.C.,* No. 04-17324 (BRL), 2008 WL 905928, at *4 (Bankr. S.D.N.Y. Mar. 31, 2008) ("The Debtors…have the burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence…."). Through the Debtors' filings with the Bankruptcy Court and additional testimonial evidence that may be adduced at the Confirmation Hearing, the Debtors will demonstrate, by a preponderance of the evidence, that all applicable subsections of section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan.

### I.

### SECTION 1129(a)(1):  THE PLAN COMPLIES WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE

Section 1129(a)(1) of the Bankruptcy Code requires that a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]." The legislative history of section 1129(a)(1) informs that this provision encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code governing classification of claims and contents of a plan, respectively. H.R. REP. NO. 95-595, at 412 (1977); S. REP. NO. 95-989, at 126 (1978); *see also Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 512-13 n.3 (5th Cir. 1998).

As demonstrated below, the Plan fully complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code, and all other applicable provisions of the Bankruptcy Code.

A.      **The Plan Complies with Section 1122**

Section 1122(a) of the Bankruptcy Code provides in pertinent part as follows:

Except as provided in subsection (b) of this section, a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

For a classification structure to satisfy section 1122 of the Bankruptcy Code, not all substantially similar claims or interests need to be designated in the same class.  Instead, claims or interests designated to a particular class must be substantially similar to each other.  *In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996).  Courts hold that claims may be separately classified if there are good business reasons to do so or if the claimants have sufficiently different interests in the plan.  *In re Wabash Valley Power Ass'n, Inc.*, 72 F.3d 1305, 1321 (7th Cir. 1995).

The Plan provides for the separate classification of Claims against and Existing Equity Interests in the Debtors based upon differences in the legal nature and/or priority of such Claims and Existing Equity Interests.  The Plan designates four (4) separate classes of Claims and one (1) Class of Existing Equity Interests as follows:

| Class | Claim / Equity Interest | Impairment Status |
| --- | --- | --- |
| Class 1 | Select Priority Claims | Unimpaired |
| Class 2 | Miscellaneous Secured Claims | Unimpaired |
| Class 3 | Senior Secured Claims | Impaired |
| Class 4 | General Unsecured Claims | Impaired |
| Class 5 | Existing Equity Interests | Impaired |

Each of the Claims or Existing Equity Interests in each particular Class is substantially similar to the other Claims or Existing Equity Interests in such Class.  Membership within each Class is based upon a creditor's or interest holder's distinct legal rights and payment priorities and, thus, is legally permissible.  Specifically, Class 1 contains all claims entitled to priority treatment under sections 507(a)(4), (5), (6) or (7) of the Bankruptcy Code.  Class 2 contains all Secured

Claims other than Senior Secured Claims and, to the extent applicable, Priority Tax Claims. Class 3 contains all claims arising under or related to the Senior Secured Debt Documents.  Class 4 contains all other General Unsecured Claims.  Class 5 contains all Existing Equity Interests in the Debtors.

Based on the foregoing, the Debtors submit the classification of claims and equity interests does not prejudice the rights of holders of such claims and interests, is consistent with the requirements of the Bankruptcy Code and, thus, is appropriate.  *See Olympia & York Florida Equity Corp. v. Bank of New York (In re Holywell Corp.)*, 913 F.2d 873, 880 (11th Cir. 1990) (plan proponent allowed considerable discretion to classify claims and interests according to facts and circumstances of case so long as classification scheme does not violate basic priority rights or manipulate voting).

Section 1122(b) of the Bankruptcy Code is an elective, not mandatory, provision relating to the designation of a class of *de minimis* claims for administrative convenience.  The Plan does not include a *de minimis* convenience class of claims.  Therefore, section 1122(b) of the Bankruptcy Code is inapplicable.

**B.     The Plan Complies with Section 1123(a) of  the Bankruptcy Code**

Section 1123(a) of the Bankruptcy Code sets forth seven (7) requirements with which every chapter 11 plan must comply.  As demonstrated herein, the Plan fully complies with each enumerated requirement.

**(i)     Section 1123(a)(1):  Designation of Classes of Claim and Interests**

Section 1123(a)(1) of the Bankruptcy Code requires that a plan must designate classes of claims and classes of equity interests subject to section 1122 of the Bankruptcy Code. As discussed above, the Plan designates four (4) classes of Claims and one (1) class of Existing

Equity Interests subject to section 1122 of the Bankruptcy Code.  *See* Plan at Art. III.

Accordingly, the Plan satisfies the requirements of section 1123(a)(1) of the Bankruptcy Code.

      (ii)      <u>Section 1123(a)(2):  Classes that Are Not Impaired by the Plan</u>

      Section 1123(a)(2) of the Bankruptcy Code requires a plan to specify which classes of claims or interests are unimpaired by the Plan.  The Plan specifies that Class 1 (Select Priority Claims) and Class 2 (Miscellaneous Secured Claims) are unimpaired by the Plan.  *See* Plan at Art. III.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

      (iii)      <u>Section 1123(a)(3):  Treatment of<br>Classes that Are Impaired By the Plan</u>

      Section 1123(a)(3) of the Bankruptcy Code requires a plan to specify how it will treat impaired classes of claims or interests.  The Plan sets forth the treatment of claims in Class 3 (Senior Secured Claims), Class 4 (General Unsecured Claims), and Class 5 (Existing Equity Interests), each of which constitutes an impaired class.  *See* Plan at Art. IV.  Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

      (iv)      <u>Section 1123(a)(4):  Equal Treatment Within Each Class</u>

      Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim or interest within a particular class unless any claim or interest holder agrees to receive less favorable treatment than other class members.  Pursuant to the Plan, the treatment of each Claim against or Existing Equity Interest in the Debtors, in each respective class, is the same as the treatment of each other Claim or Existing Equity Interest in such class.  *See* Plan at Art. IV.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

(v)    <u>**Section 1123(a)(5): Adequate Means for Implementation**</u>

Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means for the plan's implementation."  The Plan and the various documents and agreements set forth in the Plan Supplement adequately describe and contemplate the documentation and transactions necessary to implement the terms of the Plan, including, without limitation, (a) the Restructuring Transactions, including consistent tax reporting, (b) the cancellation of certain existing agreements and the Existing Equity Interests, (c) execution of the New LLC Agreement, (d) the issuance of New Equity Units, and (e) the ability of the Debtors to merge, dissolve and consolidate (as necessary).  In addition, the Plan Supplement discloses (a) the identity of the initial managers of Reorganized Express and (b) the Postconfirmation Organizational Documents.  Thus, the Plan, together with the documents and agreements contemplated therein, provide the means for implementation of the Plan as required by section 1123(a)(5) of the Bankruptcy Code.

(vi)    **Section 1123(a)(6):  Prohibitions on**
         <u>**the Issuance of Non-Voting Securities**</u>

Section 1123(a)(6) of the Bankruptcy Code prohibits the issuance of nonvoting equity securities and requires amendment of the Reorganized Debtors' charters to so provide.  As the Plan does not provide for the issuance of nonvoting equity securities, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

(vii)    <u>**Section 1123(a)(7): Provisions Regarding Managers and Officers**</u>

Section 1123(a)(7) of the Bankruptcy Code requires that the Plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee."  11 U.S.C. § 1123(a)(7).  Section 9.2

of the Plan provides that the initial Postconfirmation Board of Reorganized Express, which shall

be responsible for the management, control and operation of Reorganized Express and the other

Reorganized Debtors, shall consist of five (5) members, one of whom shall be the Debtors' chief

executive officer and the remaining four (4) of whom shall be selected by the holders of a

majority in aggregate amount of Allowed Senior Secured Claims.  *See* Plan at § 9.2.  Section 9.4

of the Plan provides that the officers of the Debtors immediately prior to the Effective Date shall

serve as the initial officers of the Reorganized Debtors on and after the Effective Date.  Based

upon the foregoing, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

**C.**      **The Plan Complies with Section 1123(b) of the Bankruptcy Code**

Section 1123(b) sets forth certain permissive provisions that may be incorporated

into a chapter 11 plan.  Each provision of the Plan is consistent with section 1123(b) of the

Bankruptcy Code.

**(i)**      **Section 1123(b)(1):  Impairment/**
             **Unimpairment of Claims and Interests**

Section 1123(b)(1) of the Bankruptcy Code provides that a plan may "impair or

leave unimpaired any class of claims, secured or unsecured, or of interests." 11 U.S.C.

§ 1123(b)(1).  Claims in Class 3 (Senior Secured Claims), Class 4 (General Unsecured Claims),

and interests in Class 5 (Existing Equity Interests) are impaired by the Plan.  Class 1 (Select

Priority Claims) and Class 2 (Miscellaneous Secured Claims) are not impaired by the Plan.  *See*

Plan at Art. III.  Accordingly, the Plan is consistent with section 1123(b)(1) of the Bankruptcy

Code.

**(ii)**     **Section 1123(b)(2):  Assumption/**
             **Rejection of Executory Contracts and Leases**

Section 1123(b)(2) of the Bankruptcy Code allows a Plan to provide for the

assumption, assumption and assignment, or rejection of executory contracts and unexpired leases

pursuant to section 365 of the Bankruptcy Code.  Section 8.1 of the Plan provides that all

executory contracts and unexpired leases that exist between the Debtors and any person or entity

shall be deemed assumed by the Debtors as of the Effective Date, except for any executory

contract or unexpired lease that (i) has been assumed or rejected pursuant to an order of the

Bankruptcy Court entered prior to the Effective Date; (ii) has previously expired or terminated

pursuant to its own terms; (iii) is the subject of a motion to reject filed by the Debtors on or

before the Confirmation Date; or (iv) is set forth in a schedule, as an executory contract or

unexpired lease to be rejected, if any, filed by the Debtors as part of the Plan Supplement.  *See*

Plan § 8.1.  Accordingly, the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

  **(iii)**  <u>**Section 1123(b)(3):  Settlement of Claims and Causes of Action**</u>

   Section 1123(b)(3)(A) of the Bankruptcy Code allows a Plan to provide for "the

settlement or adjustment of any claim or interest belonging to the debtor or to the estate."  11

U.S.C. § 1123(b)(3)(A).  As the Plan does not settle or adjust any claim or interest that belongs

to the Debtors or their estates, section 1123(b)(3)(A) of the Bankruptcy Code does not apply.

   Section 1123(b)(3)(B) of the Bankruptcy Code provides that a plan may "provide

for the retention and enforcement by the debtor" of certain claims or interests.  11 U.S.C. §

1123(b)(3)(B).  The Plan provides that, except as otherwise provided in the Plan, any action,

cause of action, liability, obligation, right, suit, debt, sum of money, damage, judgment, claim

and demand whatsoever, whether known or unknown, in law, equity or otherwise, accruing to

the Debtors will become assets of the Reorganized Debtors, and the Reorganized Debtors will

have the authority to commence and prosecute such causes of action for the benefit of the estates

of the Debtors, including, but not limited to, equitable subordination actions, recovery causes of

action and objections to claims under sections 105, 502, 510, 542 through 551, and 553 of the

Bankruptcy Code, and claims arising under or relating to the Escrow Agreement, the Indemnity

Escrow Account, Brewer, the Brewer Lawsuit, the Answer and Counterclaim, the Consulting

Agreement, and/or non-compete/non-solicitation provisions in the Transaction Agreement. *See*

Plan at § 11.8.

      **(iv)**      **Section 1123(b)(4):  Sale of All or Substantially All Assets**

Section 1123(b)(4) of the Bankruptcy Code provides that a plan may "provide for

the sale of all or substantially all of the property of the estate, and the distribution of the proceeds

of such sale among holders of claims or interests."  The Plan does not provide for any such sale

and, therefore, section 1123(b)(4) of the Bankruptcy Code is inapplicable.

      **(v)**      **Section 1123(b)(5):  Modification of Creditor Rights**

Section 1123(b)(5) of the Bankruptcy Code provides that a Plan may "modify the

rights of holders of secured claims, other than a claim secured only by a security interest in real

property that is the debtor's principal residence, or of holders of unsecured claims, or leave

unaffected the rights of holders of any class of claims."  As set forth in Article III of the Plan, the

Plan modifies the rights of holders of claims in Class 3 (Senior Secured Claims) and Class 4

(General Unsecured Claims).  The Plan also leaves unaffected the rights of holders of claims in

Class 1 (Select Priority Claims) and Class 2 (Miscellaneous Secured Claims).  Accordingly, the

Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.

      **(vi)**      **Section 1123(b)(6):  Retention of Jurisdiction**

Section 1123(b)(6) of the Bankruptcy Code is a "catchall" provision, which

permits inclusion in the Plan of any appropriate provision as long as such provision is consistent

with applicable sections of the Bankruptcy Code.  The Plan provides that, among other things,

the Bankruptcy Court will retain jurisdiction as to all matters involving the Plan and the claims

allowance and distribution process.  *See* Plan at Art. XII.  These provisions are appropriate

because the Bankruptcy Court would have otherwise had jurisdiction over all of these matters

during the pendency of these Chapter 11 Cases.  Moreover, case law establishes that a

bankruptcy court may retain jurisdiction over the debtor or the property of the estate following

confirmation.  *See In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 589 (5th Cir. 2008) (holding

that a bankruptcy court's post-confirmation jurisdiction "extends to matters that impact

compliance with or completion of the reorganization plan") (internal quotations omitted); *see

also Universal Oil Ltd. v. Allfirst Bank (In re Millennium Seacarriers, Inc.*), 419 F.3d 83, 96 (2d

Cir. 2005) ("[A] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce

its own orders, particularly when disputes arise over a bankruptcy plan of reorganization.")

(quoting *In re Petrie Retail*, 304 F.3d 223 (2d Cir. 2002)).  Accordingly, the continuing

jurisdiction of the Bankruptcy Court is consistent with applicable law and therefore permissible

under section 1123(b)(6) of the Bankruptcy Code.

    **(vii)**    <u>**Section 1123(c) Does Not Apply**</u>

    Section 1123(c) of the Bankruptcy Code only applies in a case concerning an

individual and therefore does not apply to these Chapter 11 Cases.

    **(viii)**    <u>**Section 1123(d):  Cure of Defaults**</u>

    Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan

to cure a default the amount necessary to cure the default shall be determined in accordance with

the underlying agreement and applicable nonbankruptcy law."  Section 8.2 of the Plan provides

that "any monetary amounts by which any executory contract and unexpired lease hereunder are

in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors

upon assumption thereof or as soon as practicable thereafter."  To the extent a default is

discovered, the Debtors will cure the default in accordance with the underlying agreement and

applicable nonbankruptcy law.  Accordingly, the Plan complies with section 1123(d) of the

Bankruptcy Code.

Based upon all of the foregoing, the Plan fully complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code, as well as with all other provisions of the Bankruptcy Code, and thus satisfies the requirement of section 1129(a)(1) of the Bankruptcy Code.

## II.

### RELEASES OF THE DEBTORS AND THIRD PARTIES COMPLY WITH THE BANKRUPTCY CODE

In this Circuit, plan provisions that release potential claims of voting parties will be upheld as to the parties voting in favor of the Plan. *In re Wool Growers Cent. Storage Co.*, 371 B.R. 768, 775 (Bankr. N.D. Tex. 2007) (finding that the validity of a consensual non-debtor release is primarily a question of contract law). Section 11.7(b) of the Plan, which provides for the release of potential claims held by holders of Claims voting in favor of the Plan and holders who receive a distribution under the Plan, complies with this standard. Applicable case law in the Fifth Circuit also shows that consensual, non-debtor releases that are specific in language and integral to the bankruptcy plan, such as a condition of the settlement or given for consideration, do not violate section 524(e) of the Bankruptcy Code and should be approved in the confirmation process. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050, 1051-54 (5th Cir. 1987) (where the court held that section 524(e) of the Bankruptcy Code does not preclude the discharge of a guarantor when the discharge has been accepted and confirmed as an integral part of a reorganization plan and then used the principle of res judicata to conclude that a release of claims against guarantors included in the plan approved by the bankruptcy court barred a subsequent suit against a guarantor of the debtor); *FOM Puerto Rico S.E. v. Dr. Barnes' Eyecenter, Inc.*, 255 Fed. Appx. 909, 913 (5th Cir. Nov. 28, 2007) (Court affirmed the district court's judgment that

creditor's claim against creditor was barred by res judicata because the release was an integral part of the bankruptcy plan and was specific enough to satisfy the standard in *Shoaf*).

        The releases provided in the Plan were negotiated in good faith and at arms'-length and are an integral part of the consensual agreement reflected in the Plan. Moreover, the release is supported by consideration, as reflected in the Senior Secured Lenders' agreement to accept less than 100% recovery and allowing a distribution to Class 4 (General Unsecured Creditors). Moreover, the non-debtor releases in the Plan are limited to those parties who voted to accept the Plan or who, directly or indirectly, receive a distribution under the Plan and do not operate as a release or waiver from any causes of action arising out of the willful misconduct or gross negligence of any person as determined by a final order entered by a court of competent jurisdiction. *See* Plan at § 11.7(b).

        The recent decision of the Fifth Circuit Court of Appeals in *Bank of New York Trust Co., NA v. Official Unsecured Creditors' Comm. (In re Pacific Lumber)*, 584 F. 3d 229 (5th Cir. 2009) does not limit the Court's authority to grant the non-debtor releases provided for in the Plan. In *Pacific Lumber*, the Fifth Circuit did <u>not</u> hold that third-party releases are categorically prohibited. To the contrary, the Fifth Circuit upheld a chapter 11 plan provision exculpating the unsecured creditors' committee in that case, and its members, from any negligence during the course of the bankruptcy. *Id.* at 253. In addition, the *Pacific Lumber* case is factually distinguishable from the present case in that, unlike this case, the conduct of the parties that the plan purported to release —namely (i) the debtors' directors, officers and employees who failed to propose a plan for the debtors within the exclusivity period despite several extensions, and (ii) the plan proponents and sponsors whom the Fifth Circuit described as "sophisticated investors who opted to press the limits of bankruptcy confirmation and valuation

rules" — was "troubling."  *Id.* at 237, 244, 251.  Finally, the plan that the bankruptcy court ultimately confirmed in *Pacific Lumber* was not proposed by the debtor but by a competitor of the debtor and a secured creditor of the debtor.  *Id.* at 237.  As such, the ruling in *Pacific Lumber* does not bar the third-party releases contemplated by the Plan.  Accordingly, the Debtors respectfully request that such provisions be approved by the Court.

### III.

### SECTION 1129(a)(2):  THE DEBTORS HAVE COMPLIED WITH THE BANKRUPTCY CODE

Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "compl[y] with the applicable provisions of [the Bankruptcy Code]."  The legislative history of section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code.  *See* H.R. REP. NO. 95-595, at 412 (1977); S. REP. NO. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); *see also In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).  As reflected in this Memorandum, the Voting Certification, the Declarations and the other various documents, affidavits and certificates of service filed in these Chapter 11 Cases, votes in favor of the Plan were solicited and tabulated in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.  Accordingly, section 1129(a)(2) of the Bankruptcy Code has been satisfied.

# IV.

## SECTION 1129(a)(3):  THE PLAN HAS BEEN PROPOSED
## IN GOOD FAITH AND NOT BY ANY MEANS FORBIDDEN BY LAW

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."  The Fifth Circuit Court of Appeals has held that, with respect to section 1129(a)(3), "'the requirement of good faith must be viewed in light of the totality of the circumstances surrounding establishment of a Chapter 11 plan, keeping in mind the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start.'"  *In re Cajun Elec. Power Co-op., Inc.*, 150 F.3d 503, 519 (5th Cir. 1998) (quoting *Fin. Se. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 802 (5th Cir. 1997)).  In the context of a chapter 11 plan, courts have held that "[t]he test for good faith is whether there is a reasonable likelihood that the plan will achieve a result consistent with standards under § 1129."  *In re Texas Extrusion Corp.*, 68 B.R. 712, 723 (N.D. Tex. 1986); *see also In re Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting *In re Texaco Inc.*, 84 B.R. 893, 907 (Bankr. S.D.N.Y. 1988)); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999).  Moreover, "[w]here the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied."  *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985); *Heartland Fed. Savings & Loan Assoc. v. Briscoe Enters, Ltd., II*, 994 F.2d 1160, 1162 (5th Cir. 1993).

The Debtors, as the plan proponent, have met their good faith obligation under the Bankruptcy Code.  As set forth in the Declarations, the Debtors proposed the Plan with the purpose of preserving the going concern value of their businesses, reorganizing, and maximizing value to creditors.  The Plan (including all documents necessary to effectuate the Plan) is the

result of extensive arms'-length negotiations among the Debtors, the Agent, and their Senior Secured Lenders.  The Plan contemplates a balance sheet restructuring effectuated through the conversion of the Debtors' prepetition secured debt under the Senior Secured Debt Documents into New Equity Units in Reorganized Express.  This balance sheet restructuring will allow the Debtors' creditors to realize value on account of their Claims while preserving the Debtors' going concern value.  Furthermore, the Plan provides for a distribution of the value of the Debtors' estates to creditors in accordance with the priorities and provisions of the Bankruptcy Code.

The Plan also achieves the primary objectives underlying a chapter 11 bankruptcy:  the reorganization of a debtor and the distribution of value to creditors for amounts owing.  *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources."); *Pereira v. Foong (In re Ngan Gung Rest.)*, 254 B.R. 566, 570 (Bankr.  S.D.N.Y. 2000) (stressing the importance of payment of creditors in chapter 11 cases).  The Plan accomplishes these goals by providing the means through which the Debtors and their successor in interest, the Reorganized Debtors, may continue to operate as a viable entity and effectuate prompt distributions to their creditors.  Inasmuch as the Plan promotes the rehabilitative objectives and purposes of the Bankruptcy Code, the Plan and the related documents have been filed in good faith and the Debtors have satisfied its obligations under section 1129(a)(3) of the Bankruptcy Code.

**V.**

**SECTION 1129(a)(4): THE PLAN PROVIDES THAT PROFESSIONAL FEES AND EXPENSES ARE SUBJECT TO BANKRUPTCY COURT APPROVAL**

Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees

and expenses paid by the plan proponent, the debtor, or a person receiving distributions of property under the plan, be subject to approval by the Bankruptcy Court.

The Plan provides that the Bankruptcy Court shall retain jurisdiction "to hear and determine all applications for compensation and reimbursement of expenses under sections 330, 331 and 503(b) of the Bankruptcy Code." *See* Plan Art. XII.  All fees and expenses accrued through the Confirmation Date thus remain subject to final review by the Bankruptcy Court for reasonableness pursuant to sections 330, 331, and 503(b) of the Bankruptcy Code .

The foregoing procedures for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtor satisfy the objectives of section 1129(a)(4) of the Bankruptcy Code.  *See In re Elsinore Shore Assos.*, 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (requirements of section 1129(a)(4) satisfied where plan provided for payment of only "allowed" administrative expenses); *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) ("Court approval of payments for services and expenses is governed by various Code provisions – *e.g.*, §§ 328, 329, 330, 331, and 503(b) – and need not be explicitly provided for in a Chapter 11 plan."); *In re McCommas LFG Processing Partners, LP*, 2007 Bankr. LEXIS 4053, *45 (Bankr. N.D. Tex. 2007).  Based upon the foregoing, the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

**VI.**

**SECTION 1129(A)(5):  THE DEBTORS HAVE DISCLOSED ALL NECESSARY INFORMATION REGARDING MANAGERS, OFFICERS, AND INSIDERS**

Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor; that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and that there be

disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtor. This provision focuses on the methods by which the management of a reorganized corporation is to be chosen, requiring adequate representation of those whose investments are involved in the reorganization – i.e., creditors and equity holders. *See* 7 *Collier on Bankruptcy* ¶ 1123.01 [7], at 1123-16 (Lawrence P. King ed., 15th ed. rev. 1996). A plan may contemplate the retention of the debtor's existing directors and officers. *See, e.g.*, *Texaco*, 84 B.R. at 908.

As set forth above, the manner of selection of the initial board of managers of Reorganized Express is appropriate. The names and professional backgrounds of the individuals who are to serve as the members of Reorganized Express were disclosed in the Plan Supplement filed with the Bankruptcy Court on December 2, 2009. In accordance with the provisions of the Plan, from and after the Effective Date, the initial board of managers of the Reorganized Debtors shall consist of Darron Anderson, Richard Maybaum, Mark Lawrence, and two members to be proposed later. In addition, Section 9.4 of the Plan provides that the officers of the Debtors immediately prior to the Effective Date shall serve as the initial officers of the Reorganized Debtors on and after the Effective Date. Plan at § 9.4. In accordance with section 1129(a)(5)(B) of the Bankruptcy Code, Section 9.4 of the Plan also provides that such officers shall serve in accordance with applicable non-bankruptcy law, any employment agreement with the Reorganized Debtors, and the Postconfirmation Organizational Documents. *Id.* Each of the individuals that will serve as officer or manager of Reorganized Express is qualified and willing to serve in their respective capacity. Accordingly, the Debtors submit that the Plan fully satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

Based on the foregoing, the requirements of section 1129(a)(5) of the Bankruptcy Code have been satisfied.

## VII.

### <u>SECTION 1129(a)(6) IS NOT APPLICABLE</u>

Section 1129(a)(6) of the Bankruptcy Code provides that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." The Debtors submit that this provision of the Bankruptcy Code is not applicable to their Chapter 11 Cases as neither the Debtors nor the Reorganized Debtors are subject to any form of rate regulation that would require such regulatory approval to satisfy section 1129(a)(6) of the Bankruptcy Code. In addition, by its terms, section 1129(a)(6) of the Bankruptcy Code applies only where a rate change is "provided for in the plan." Here, the Plan provides for no such rate change and section 1129(a)(6) is inapplicable.

## VIII.

### <u>THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(7)</u>

Section 1129(a)(7) of the Bankruptcy Code provides, in relevant part:

With respect to each impaired class of claims or interests –

(A)  each holder of a claim or interest of such class –

      (i)      has accepted the plan; or

      (ii)     will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date . . . .

Section 1129(a)(7) of the Bankruptcy Code is often referred to as the "best interests test" or the "liquidation test."  The best interests test focuses on individual dissenting creditors rather than classes of claims.  *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999).  Under the best interests test, the court "must find that each [non-accepting] creditor will receive or retain value that is not less than the amount he would receive if the debtor were liquidated [under chapter 7 of the Bankruptcy Code]."  *Id*. at 440; *United States v. Reorganized CF&I Fabricators, Inc.*, 518 U.S. 213, 228 (1996).

The best interests test is satisfied as to each holder of a Claim in an unimpaired Class of Claims, which includes Class 1 (Select Priority Claims) and Class 2 (Miscellaneous Secured Claims), as they are deemed to have accepted the Plan.  The best interests test is also satisfied as to each holder of a Claim in an impaired Class of Claims, which includes Class 3 (Senior Secured Claims) and Class 4 (General Unsecured Claims).

Attached as Exhibit C to the Disclosure Statement is the Debtors' liquidation analysis (the "**Liquidation Analysis**"), which is supported by the Swick Declaration.  The Liquidation Analysis demonstrates that the Debtors' creditors would receive more value under the Plan than they would receive in a hypothetical chapter 7 liquidation.

Specifically, the Plan provides payment in full to Class 1 (Select Priority Claims) and leaves unimpaired Class 2 (Miscellaneous Secured Claims).  Holders of Claims in Class 3 (Senior Secured Claims) and Class 4 (General Unsecured Claims) will also retain some value under the Plan.  In contrast, in a chapter 7 liquidation, only Class 3 (Senior Secured Claims) would receive any recoveries while all other junior claims would receive nothing.  Therefore, the claimants in each Class of claims will receive a greater distribution under the Plan than they

would in a chapter 7 liquidation.  Based upon the foregoing, the Debtors submit the best interest test is satisfied.

## IX.

### SECTION 1129(a)(8):  THE PLAN HAS BEEN ACCEPTED BY IMPAIRED CLASSES, AND, AS TO SUCH CLASSES, THE REQUIREMENTS OF SECTION 1129(A)(8) HAVE BEEN SATISFIED

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept the plan or not be impaired by the plan.  As set forth above, holders of claims in Class 1 (Select Priority Claims) and Class 2 (Miscellaneous Secured Claims) are unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  As indicated on the Voting Certification, Class 3 (Senior Secured Claims) and Class 4 (General Unsecured Claims), which are impaired Classes of Claims eligible to vote, have affirmatively voted to accept the Plan.  As such, section 1129(a)(8) of the Bankruptcy Code is satisfied with respect to these Classes of Claims.

Because holders of Existing Equity Interests in Class 5 will not receive or retain any property on account of their interests in the Debtors, Class 5 (Existing Equity Interests) is deemed to have rejected the Plan.  Nonetheless, as set forth in Section X below, the Plan may be confirmed under the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

## X.

### SECTION 1129(a)(9):  THE PLAN PROVIDES FOR PAYMENT IN FULL OF ALL ALLOWED PRIORITY CLAIMS

The Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code, which requires that persons holding priority claims under the Bankruptcy Code receive specified cash payments.

With respect to Administrative Expense Claims, in accordance with section 1129(a)(9)(A) of the Bankruptcy Code, Section 2.1 of the Plan provides that, except to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid in full and performed by the Debtors or Reorganized Debtors, as the case may be, in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

With respect to DIP Facility Claims, in accordance with section 1129(a)(9)(A) of the Bankruptcy Code, Section 2.2 of the Plan provides that, except to the extent that any entity entitled to payment of any Allowed DIP Facility Claim agrees to a different treatment, the DIP Facility Claims shall be paid in full, in Cash, as soon as reasonably practicable following the Effective Date.

With respect to the payment of Allowed Select Priority Claims, in accordance with section 1129(a)(9)(B) of the Bankruptcy Code, the Plan provides that, except to the extent that a holder of an Allowed Select Priority Claim agrees to a less favorable treatment, each holder of an Allowed Select Priority Claim shall receive, in full satisfaction of such Claim, Cash in the full amount of the Allowed Select Priority Claim on the later of the Effective Date and the

date such claim becomes Allowed.  Thus, the Plan satisfies section 1129(a)(9)(B) of the Bankruptcy Code.

With respect to Priority Tax Claims, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, Section 2.4 of the Plan provides that, except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors or the Reorganized Debtors, (a) on the Effective Date, or as soon thereafter as is practicable, Cash in an amount equal to such Allowed Priority Tax Claim or, (b) commencing on the Effective Date, or as soon thereafter as is practicable, and continuing over a period not exceeding five (5) years from and after the Commencement Date, equal semi-annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest for the period after the Effective Date at the rate determined under applicable non-bankruptcy law.  Thus, the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code.

Based upon the foregoing, the Plan satisfies all the requirements of section 1129(a)(9) of the Bankruptcy Code.

## XI.

### SECTION 1129(a)(10):  AT LEAST ONE CLASS OF IMPAIRED CLAIMS HAS ACCEPTED THE PLAN

Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the Plan by at least one class of impaired claims, "determined without including any acceptance of the plan by any insider" if a class of claims is impaired by the Plan.  The Debtors satisfy this requirement because the two Classes of impaired Claims entitled to vote on the Plan — Class 3 (Senior Secured Claims) and Class 4 (General Unsecured Claims) have affirmatively

accepted the Plan, without including the acceptance of the Plan by insiders, if any, in such

Classes.  *See* the Voting Certification.

## XII.

### SECTION 1129(a)(11):  THE PLAN IS NOT LIKELY TO BE FOLLOWED BY LIQUIDATION OR THE NEED FOR FURTHER REORGANIZATION

Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition to

confirmation, the Bankruptcy Court determine that the Plan is feasible.  Specifically, the

Bankruptcy Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

As described below, and as set forth in the Anderson and Davis Declarations, the Plan is feasible

within the meaning of this provision.

### A.    Legal Standard

The feasibility test set forth in section 1129(a)(11) requires the Bankruptcy Court

to determine whether the Plan is workable and has a reasonable likelihood of success.  *See In re*

*Briscoe Enters., Ltd., II*, 994 F.2d 1160, 1165-66 (5th Cir. 1993); *In re Cypresswood Land*

*Partners, I*, 409 B.R. 396, 432-33 (Bankr. S.D. Tex. 2009); *In re The Leslie Fay Cos.*, 207 B.R.

at 788; *In re Woodmere Investors Ltd. P'ship*, 178 B.R. 346, 361 (Bankr. S.D.N.Y. 1995).

To satisfy the requirements of section 1129(a)(11), the Debtors do not need to

guarantee success, "only a reasonable assurance of commercial viability is required."  *In re T-H*

*New Orleans Ltd. P'ship*, 116 F.3d at 801; *Heartland Fed. Savings & Loan Assoc.*, 994 F.2d at

1162 (quoting *In re Lakeside Global II*, 226 B.R. 499, 507 (Bankr. S.D. Tex. 1989)).  This does

not mean, however, that success under a plan must be guaranteed.  *In re T-H New Orleans Ltd.*

*P'ship*, 116 F.3d at 801.  Accordingly, the key issue is whether there is a reasonable probability that the provisions of the Plan can be performed.  Factors considered by courts include (i) the economic conditions of the debtor's business; (ii) the debtor's earning power; (iii) the ability of management; (iv) the availability of prospective credit; and (v) any other related matters which will determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.  *See In re The Landing Assoc., Ltd.*, 157 B.R. 791, 812 (Bankr. W.D. Tex. 1993);  *In re Swiftco, Inc.*, 1988 Bankr. LEXIS 2251, *16 (Bankr. S.D. Tex. 1988); *see also Leslie Fay*, 207 B.R. at 789 (citing 7 COLLIER ON BANKRUPTCY ¶ 1129 LH[2], at 1129-82 (15th ed. rev. 1996)).

**B.**      **The Plan Satisfies the Feasibility Requirement**

Applying the foregoing legal standards, the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.

Significantly, and as is apparent from the Plan and Disclosure Statement, the Plan provides for an overall reduction of the Debtors' senior secured debt by over $330 million through the consensual conversion of the Allowed Senior Secured Claims into New Equity Units.  This is a significant de-leveraging of the Debtors' balance sheet and will improve the Reorganized Debtors' financial stability.  Moreover, based on the Declarations (i) the Plan is a workable scheme of reorganization and operation and (b) there is reasonable likelihood that the provisions of the Plan will be performed by the Reorganized Debtors.

The Debtors have prepared projections of their financial performance on a consolidated basis for the period of January 1, 2010 through December 31, 2012 (the "**Projections**"), including projected income statements, balance sheets and statements of cash flows.  *See* Disclosure Statement § VII.B.  Based upon the Projections, the Debtors have also

prepared a comprehensive business plan for the same covered period, which was developed at the district (field) office and supercenter levels.

As set forth in the Disclosure Statement and the Davis Declaration, the Projections are premised upon a number of good-faith assumptions, which include, among other things:

1. Considering the current overcapacity of equipment, and modest forecasted growth in rig count, no pricing increases for the Debtors' services were assumed to occur during the period covered by the Projections.

2. The Projections were developed considering the outlook for the expected growth in U.S. land rigs from mid 2009 through the end of 2012.

3. The assumed Effective Date is January 1, 2010. The operating assumptions assumed the operational restructuring plan would be fully implemented by December 31, 2009.

As set forth in the Davis Declaration, these Projections indicate that the Debtors will have sufficient resources to meet all of their obligations under the Plan. Specifically, as evidenced by the Projections, both the Debtors' cash position and net income are projected to increase beginning in fiscal year 2010 and continuing through the end of fiscal year 2012. In addition, the Debtors have built appropriate flexibility into the Projections so that in the event that economic or other conditions are less favorable than expected, the Debtors will be able to maintain appropriate liquidity and operational cash flow.

Further, the Reorganized Debtors will retain Mr. Darron Anderson, the current Chief Executive Officer, as Chief Executive Officer and Mr. James Davis, the current Chief Financial Officer, as the new Chief Financial Officer. Messrs. Anderson and Davis have significant experience and extensive knowledge regarding the Debtors' business operations, customer base, and the oilfield services generally and will ensure the Reorganized Debtors continue to be managed by experienced and qualified individuals.

Based upon the foregoing, the Plan has a more than reasonable likelihood of success and satisfies the feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

## XIII.

### SECTION 1129(a)(12):  ALL STATUTORY FEES HAVE BEEN OR WILL BE PAID

Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 [of title 28 of the United States Code], as determined by the court at the hearing on confirmation of the plan."  Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.  In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, section 13.7 of the Plan provides that all such fees and charges, to the extent not previously paid, will be paid on the Effective Date.  *See* Plan at § 13.7. Thus, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

## XIV.

### SECTION 1129(a)(13) DOES NOT APPLY

The Plan provides that, notwithstanding anything contained in the Plan to the contrary, unless rejected by order of the Bankruptcy Court, the Reorganized Debtors will honor, in the ordinary course of business, all employee compensation and Benefit Plans of the Debtors, including Benefit Plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code entered into before or after the Commencement Date and not since terminated. The Debtors maintain a 401(k) plan for the benefit of their employees, which the Reorganized Debtors will continue if the Plan is confirmed.  The Debtors do not, however, maintain any Benefit Plans or programs for retirees as defined in sections 1114 and 1129(a)(13) of the

Bankruptcy Code and would not, if the Plan is confirmed, have any obligations thereunder.
Thus, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

**XV.**

**<u>SECTIONS 1129(a)(14) AND 1129(a)(15) DO NOT APPLY</u>**

Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic
support obligations.  The Debtors are not subject to any domestic support obligations, and, as
such, section 1129(a)(14) does not apply.

Section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the
debtor is an "individual" (as that term is defined in the Bankruptcy Code).  The Debtors are not
"individuals," and, accordingly, section 1129(a)(15) is inapplicable.

**XVI.**

**SECTION 1129(B):  THE PLAN SATISFIES THE "CRAM DOWN"**
**<u>REQUIREMENTS WITH RESPECT TO CLASS 5</u>**

Section 1129(b) of the Bankruptcy Code provides a mechanism for confirmation
of a plan in circumstances where not all impaired classes of claims and equity interests accept a
plan.  This mechanism is known colloquially as "cram down."

Section 1129(b) provides in pertinent part:

> [I]f all of the applicable requirements of [section 1129(a) of the
> Bankruptcy Code] other than [the requirement contained in section
> 1129(a)(8) that a plan must be accepted by all impaired classes] are
> met with respect to a plan, the court, on request of the proponent of
> the plan, shall confirm the plan notwithstanding the requirements
> of such paragraph if the plan does not discriminate unfairly, and is
> fair and equitable, with respect to each class of claims or interests
> that is impaired under, and has not accepted, the plan.

Thus, under section 1129(b), the Bankruptcy Court may "cram down" a plan over the rejection
of a plan by impaired classes of claims or equity interests as long as the plan does not

"discriminate unfairly" and is "fair and equitable" with respect to such classes. *See, e.g., Heartland Fed. Savings & Loan Assoc.*, 994 F.2d at 1162.

As indicated above, holders of Claims in Class 5 (Existing Equity Interests) will receive no distribution on account of their interests in the Debtors and, therefore, Class 5 is deemed to have rejected the Plan. Two impaired classes – Class 3 (Senior Secured Claims) and Class 4 (General Unsecured Claims) – have overwhelmingly accepted the Plan by the requisite amounts and, accordingly, the Debtors request confirmation of the Plan pursuant to section 1129(b) with respect to Class 5.

## A.     The Plan Does Not Discriminate Unfairly Against Claims in Class 5

The unfair discrimination standard of section 1129(b) of the Bankruptcy Code ensures that a plan does not unfairly discriminate against a dissenting class with respect to the value it will receive under a plan when compared to the value given to all other similarly situated classes. *In re MCorp Fin., Inc.*, 137 BR. 219, 225 (Bankr. S.D. Tex. 1992). "[U]nfair discrimination is best viewed as a horizontal limit on nonconsensual confirmation …. Just as the fair and equitable requirement regulates priority among classes of creditors having higher and lower priorities, creating interpriority fairness, so the unfair discrimination provision promotes intra-priority fairness, assuming equitable treatment among creditors who have the same level of priority." *In re Sentry Operating Co. of Tex.*, 264 B.R. 850, 863 (S.D. Tex. 2001). The Bankruptcy Code is based on the idea of "equality of treatment" and so "creditors with claims of equal rank are entitled to equal distribution." *Id.* at 863.

Section 1129(b)(1) does not prohibit discrimination between classes; it prohibits only discrimination that is unfair. *In re 11,111, Inc.*, 117 B.R. 471, 478 (Bankr. D. Minn. 1990). The weight of judicial authority holds that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if similar classes are treated differently without a

reasonable basis for the disparate treatment.  *See In re Buttonwood Partners, Ltd.*, 111 B.R. 57 (Bankr. S.D.N.Y. 1990); *In re Johns-Manville Corp.*, 68 B.R. 618.  Accordingly, as between two classes of claims or two classes of equity interests, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests, *see, e.g.*, *Johns-Manville Corp.*, 68 B.R. at 636, or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment, *see, e.g., Buttonwood Partners*, 111 B.R. at 63; *In re Rivera Echevarria*, 129 B.R. 11, 13 (Bankr. D.P.R. 1991).

Class 5 is comprised of all prepetition equity interests in the Debtors.  The Plan provides that holders of Existing Equity Interests in Class 5 will receive no property on account of such interests, which will be cancelled on the Effective Date.  Class 5 is the only class of equity interests under the Plan and, as such, differs in legal nature and priority from all other classes.  Accordingly, the Plan does not discriminate unfairly against Class 5; rather, the Plan effectuates the priorities set forth in the Bankruptcy Code.

## B.        The Plan is Fair and Equitable as to Claims in Class 5

Section 1129(b)(2) of the Bankruptcy Code defines the phrase "fair and equitable" as follows:

> (C)    As to Equity Interest Holders:  Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

In the instant case, the "fair and equitable" rule is satisfied as to the holders of Existing Equity Interests in Class 5.  Specifically, the Plan maintains the relative priority among the classes and no class receives more value than its respective claim.

Class 5 is comprised of holders of Existing Equity Interests.  Pursuant to the

Bankruptcy Code, equity interests are afforded the lowest priority in the distribution of a debtor's

estate, and, accordingly, there are no Classes junior to Class 5.  Therefore, because no holder of a

junior interest will receive or retain any property under the Plan, the Plan satisfies the absolute

priority rule of section 1129(b)(2)(C) of the Bankruptcy Code and provides for the fair and

equitable treatment of Existing Equity Interests in Class 5.

C.       **The "Gifting" of New Equity Units to the Macquarie Group**
         **Does Not Violate the Bankruptcy Code**

Pursuant to Section 5.2(a)(ii) of the Plan, on the Effective Date, the holders of

Allowed Senior Secured Claims will gift 2% of the New Equity Units to be issued in connection

with the Plan to the Macquarie Group.  Such a gift is an accommodation for the Macquarie

Group's role in the restructuring of the Debtors and for their support of confirmation of the

Debtors' Chapter 11 Cases.  The Macquarie Group entity that will receive the 2% gift on the

Effective Date is not the same Macquarie Group entity that is a holder of Existing Equity

Interests.

Voluntary shifting of plan distributions from senior creditors to junior creditors

fully complies with the Bankruptcy Code and applicable case law.  The rationale for "gifting" is

based on the notion that "creditors are generally free to do whatever they wish with the

bankruptcy dividends they receive, including to share them with other creditors."  *Official*

*Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1313 (1st Cir. 1993); *see also*

*In re MCorp Fin., Inc.*, 160 B.R. 941, 960 (S.D. Tex. 1993) (where the court stated that senior

creditors could "share their proceeds with creditors junior to the juniors, as long as the juniors

continue to receive as least as much as what they would without the sharing.").

Here, as evidenced by the Liquidation Analysis, were these cases to be converted to cases under chapter 7 of the Bankruptcy Code, only the Debtors' Senior Secured Lenders would realize any recovery on their Claims.  With respect to the General Unsecured Creditors  – the only other Class of Claims senior to Existing Equity Interests – such Class, under a liquidation scenario, would receive no distribution.  Similarly, holders of Existing Equity Interests would also receive no distribution under a liquidation scenario.  Accordingly, holders of both General Unsecured Claims and the remaining Existing Equity Interests would receive the same distribution (or worse) even without the "gift" contemplated by the Plan.  *See In re MCorp. Fin., Inc.*, 160 B.R. at 960.

Accordingly, the Debtors' submit that the "gift" contemplated by the Plan is in accordance with the mandates of the Bankruptcy Code and should be approved.

## XVII.

## <u>CONCLUSION</u>

The Plan complies with and satisfies all of the requirements of section 1129 of the Bankruptcy Code and should, therefore, be confirmed.

Dated:  December 4, 2009
        New York, New York

     */s/ Alfredo R. Pérez*          
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002-2784
Telephone:  (713) 546-5000
Facsimile:   (713) 224-9511

Attorneys for Debtors
and Debtors in Possession